**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **IN RE: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION** | : | MDL NO. 2740 |
| | : | SECTION “N” (5) |
| EVELYN LUDGOOD _ <br> Plaintiff(s) | : | HON. KURT D. ENGELHARDT |
| | | MAG. JUDGE NORTH |
| vs. | | COMPLAINT & JURY DEMAND |
| SANOFI S.A., <br> AVENTIS PHARMA S.A., and <br> SANOFI-AVENTIS U.S. LLC, separately, and doing business as WINTHROP U.S. <br> HOSPIRA WORLDWIDE, INC.; and <br> SUN PHARMA GLOBAL INC.; and <br> McKESSON CORPORATION d/b/a McKESSON PACKAGING; and <br> SANDOZ INC.; and <br> ACCORD HEALTHCARE INC.; and <br> PFIZER, INC.; and <br> ACTAVIS PHARMA, INC.; and <br> NORTHSTAR RX LLC; and <br> EAGLE PHARMACEUTICALS, INC. <br> Defendants | | Civil Action No.:_______________ |

**COMPLAINT AND JURY DEMAND**

Plaintiff, Evelyn Ludgood, by and through her attorneys, Bachus & Schanker, LLC, respectfully submits the following Complaint and Jury Demand against Defendants Sanofi S.A.; Aventis Pharma S.A.; and Sanofi-Aventis U.S. LLC, separately, and doing business as Winthrop U.S; and Hospira Worldwide, Inc.; and Sun Pharma Global Inc.; and McKesson Corporation d/b/a McKesson Packaging; and Sandoz Inc.; and Accord Healthcare Inc.; and Pfizer, Inc.; and

Actavis Pharma, Inc.; and Northstar Rx LLC; and Eagle Pharmaceuticals, Inc., and alleges the following upon personal knowledge, information and belief, and investigation of counsel.

## NATURE OF THE ACTION

1. This action seeks to recover damages for injuries sustained by Plaintiff as the direct and proximate result of the wrongful conduct of Defendants Sanofi S.A., Aventis Pharma S.A., Sanofi-Aventis U.S. LLC, and/or Hospira Worldwide, Inc., and/or Sun Pharma Global Inc., and/or McKesson Corporation d/b/a McKesson Packaging, and/or Sandoz Inc., and/or Accord Healthcare, Inc.., and/or Pfizer, Inc., and/or Actavis Pharma, Inc., and/or Northstar Rx LLC, and and/or Eagle Pharmaceuticals, Inc., in connection with the designing, developing, manufacturing, distributing, labeling, advertising, marketing, promoting, and selling of docetaxel (TAXOTERE®), and/or generic non-bioequivalents of same - prescription medications used in the treatment of breast cancer.

## JURISDICTION

2. This Court has subject matter jurisdiction pursuant to 28. U.S.C. § 1332 (diversity jurisdiction). The amount in controversy exceeds $75,000.00 exclusive of interest and costs. There is complete diversity of citizenship between Plaintiff and Defendants. Plaintiff was resident and citizen of and was domiciled in the State of Alabama at all times pertinent hereto. As set forth more fully below, Defendants Sandoz and Sanofi Aventis are entities organized in the State of New Jersey, all other Defendants have their principal place of business in a state other than the State of New Jersey, and none of the other Defendants is a citizen or resident of the State of Alabama.

3. This Court has personal jurisdiction over Defendants, each of which is licensed to conduct and/or is systematically and continuously conducting business in the State of New Jersey, including, but not limited to, the marketing, advertising, selling, and distributing of drugs, including docetaxel (TAXOTERE®), and/or generic non-bioequivalents of same, to the residents in this State.

4. To establish personal jurisdiction in a diversity case, a plaintiff must show both that jurisdiction is proper under the forum state's long-arm statute and that exercise of personal jurisdiction over the defendant comports with the Due Process Clause of the United States Constitution. *See* Daimler AG v. Bauman, 134 S. Ct. 746, 753, 187 L. Ed. 2d 624 (2014); *see also* Burger King Corp. v. Rudzewicz, 471 U.S. 462, 464, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

5. As set forth *supra*, the instant civil action is based on diversity jurisdiction pursuant to 28 U.S.C. § 1332.

6. The forum state in the instant case is the State of New Jersey.

7. New Jersey's long-arm statute, *NJ. Court Rule 4:4-4*, establishes specific personal jurisdiction over a person or its agent engaging in the commission of a tortious act within the State of New Jersey

8. As set forth *infra*, Plaintiff alleges that Defendant(s) and/or their agents engaged in the commission of a tortious act within the State of New Jersey.

9. Under the Due Process Clause of the Fourteenth Amendment, personal jurisdiction may be asserted over the Defendants if the Defendants have sufficient "minimum contacts" with the state, so that the imposition of jurisdiction would not violate "traditional

notions of fair play and substantial justice." *See* Helicopteros Nacionales De Columbia, S.A. v. Hall, 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984) (quoting International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)).

10. Specific jurisdiction exists if a defendant has "purposefully directed" its activities toward the forum state, and if the lawsuit is based upon injuries that "arise out of" or "relate to" the defendant's contacts with the state. *See* Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985) (citing Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984) *and Helicopteros,* 466 U.S. at 414, 104 S.Ct. at 1872).

11. As alleged *infra*, Plaintiff's injuries complained of in the instant civil action "arise out of" or "relate to" the Defendants' contacts with the State of New Jersey

12. Here, Defendants have sufficient "minimum contacts" with the State of New Jersey, so that the imposition of jurisdiction would not violate "traditional notions of fair play and substantial justice."

**PARTIES**

13. Plaintiff Evelyn Ludgood was at all relevant times a citizen and adult resident of the State of Alabama and was prescribed and used docetaxel (TAXOTERE®) and/or a generic non-bioequivalent of the same, which were developed, manufactured, promoted, marketed, distributed, and sold by Defendants. Plaintiff has suffered damages as a result of Defendants' illegal and wrongful conduct alleged herein.

**SANOFI, AVENTIS, AND SANOFI-AVENTIS DEFENDANTS**

14. Defendant Sanofi S.A. is a corporation or Société Anonyme organized and existing under the laws of France, having its principal place of business at 54 rue La Boétie, 75008 Paris, France.

15. Defendant Aventis Pharma S.A. is a corporation or Société Anonyme organized and existing under the laws of France, having its principal place of business at 20 avenue Raymond Aron, 92160 Antony, France.

16. Defendant Sanofi-Aventis U.S. LLC is a Delaware limited liability company, which has its principal place of business at 55 Corporate Drive, Bridgewater, New Jersey 08807. Defendant Sanofi-Aventis U.S. LLC is a subsidiary of Defendant Sanofi S.A. Defendant Sanofi S.A. is the only member and owns 100% of the membership interest (both financial and voting) of Defendant Sanofi-Aventis U.S. LLC.

17. Defendant Sanofi-Aventis U.S. LLC also sometimes operates, promotes, markets, sells, distributes pharmaceutical products, and does business under the name of Winthrop U.S., which is not a separately existing legal entity but rather is a business unit or division operating within and part of Sanofi-Aventis U.S. LLC.

18. At all times relevant hereto, Defendant Sanofi-Aventis U.S. LLC is registered with the New Jersey Secretary of State to do business in the State of New Jersey and has a registered agent in the State of New Jersey.

19. At all times relevant hereto, Defendant Sanofi-Aventis U.S. LLC has employees in the State of New Jersey.

20. At all times relevant hereto, Defendant Sanofi-Aventis U.S. LLC actively marketed docetaxel (TAXOTERE®) within the State of New Jersey by providing marketing

information about the drug to medical doctors and providers of medical treatment throughout the State of New Jersey.

21. At all times relevant hereto, Defendant Sanofi-Aventis U.S. LLC solicited purchases of docetaxel (TAXOTERE®) from within the State of New Jersey by soliciting purchases of docetaxel (TAXOTERE®) from medical doctors and providers of medical treatment throughout the State of New Jersey.

22. Upon information and belief, at all times relevant hereto, Defendant Sanofi-Aventis U.S. LLC provided product information about docetaxel (TAXOTERE®), and samples of docetaxel (TAXOTERE®) to, medical doctors and providers of medical treatment throughout the State of New Jersey and generated in the State of New Jersey.

23. At all times relevant hereto, Defendant Sanofi-Aventis U.S. LLC sold docetaxel (TAXOTERE®) within the State of New Jersey by marketing and selling the drug to medical doctors and providers of medical treatment throughout the State of New Jersey.

24. At all times relevant hereto, Defendant Sanofi-Aventis U.S. LLC shipped docetaxel (TAXOTERE®) to the State of New Jersey by shipping the drug to medical doctors and providers of medical treatment throughout the State of New Jersey.

25. At all times relevant hereto, Defendant Sanofi-Aventis U.S. LLC expected that docetaxel (TAXOTERE®) would be sold, purchased, and used in the State of New Jersey after being labelled and marketed in New Jersey.

26. At all times relevant hereto, Defendant Sanofi-Aventis U.S. LLC purposefully directed its activities towards the State of New Jersey.

27. At all times relevant hereto, Defendant Sanofi-Aventis U.S. LLC exercised the privilege of conducting business in the State of New Jersey.

28. At all times relevant hereto, Defendant Sanofi-Aventis U.S. LLC enjoyed the benefits and protections of the laws of the State of New Jersey.

29. At all times relevant hereto, Defendant Sanofi-Aventis U.S. LLC's activities in the State of New Jersey were neither irregular nor casual; rather, those activities were systematic and continuous.

30. Defendant Sanofi-Aventis U.S. LLC had fair warning that it might be subject to personal jurisdiction in the State of New Jerseyand that it might be brought into court in the State of New Jersey with respect to its systematic and continuous activities involved with the marketing, advertising, solicitation of purchases, and sales of docetaxel (TAXOTERE®) in the State of New Jersey.

31. Specific personal jurisdiction over Defendant Sanofi-Aventis U.S. LLC in the State of New Jersey is reasonable.

32. There is no burden on Defendant Sanofi-Aventis U.S. LLC in litigating the instant case in New Jersey as Defendant Sanofi-Aventis U.S. LLC is already licensed to do business in the State of New Jersey, has a registered agent in the State of New Jersey, regularly systematically and continuously solicits and conducts business in the State of New Jersey, and already enjoys the benefits of the protections of the laws of the State of New Jersey.

33. Plaintiff has a substantial interest in obtaining convenient and effective relief in the State of New Jersey – the place where Defendants purposeful activities ultimately resulted in her injuries. On the other hand, if personal jurisdiction does not lie in New Jersey Plaintiff will

be forced to litigate her case(s) in France and/or the state of incorporation of each individual Defendant.

34. The interstate judicial system's interest in obtaining the most efficient resolution of controversies is maximized by having personal jurisdiction over Defendant Sanofi-Aventis U.S. LLC lie in the State of New Jersey as the sale of the docetaxel (TAXOTERE®) occurred in the State of New Jersey, Plaintiff suffered injury caused by actions in the State of New Jersey, and numerous witnesses to cause of both the injury to, and harm suffered by, Plaintiff reside in the State of New Jersey.

35. The shared interest of the several States in furthering fundamental substantive social policies is maximized by having personal jurisdiction over Defendant Sanofi-Aventis U.S. LLC lie in the State of New Jersey; to wit, the State of New Jersey – just like the other States – has a strong interest in seeing that its citizens who are afflicted by crippling diseases such as cancer are protected from the tortious acts of nonresident corporations such as Defendant Sanofi-Aventis U.S. LLC who purposefully direct the sale of cancer treatment drugs into the State.

36. At all times relevant hereto, as set forth more fully *infra*, Defendant Sanofi-Aventis U.S. LLC is a wholly-owned subsidiary of Defendant Sanofi S.A. – 100% owned and controlled by Defendant Sanofi S.A.

37. At all times relevant hereto, as set forth more fully *infra*, Defendant Aventis-Pharma S.A. is a wholly-owned subsidiary of Defendant Sanofi S.A.

38. At all times relevant hereto, as set forth more fully *infra*, Defendant Aventis-Pharma S.A., a wholly-owned subsidiary of Defendant Sanofi S.A., was the patent-holder of docetaxel (TAXOTERE®). Indeed, Defendant Aventis-Pharma S.A., along with Defendant

Sanofi-Aventis U.S. LLC, prosecutes patent infringement lawsuits with respect to docetaxel (TAXOTERE®) in the United States. *See, e.g.*, Aventis Pharma S.A. and Sanofi-Aventis US LLC v. Hospira, Inc., 743 F. Supp. 2d 305, 322 (D. Del. 2010) aff'd, 675 F.3d 1324 (Fed. Cir. 2012).

39. At all times relevant hereto, Defendant Sanofi-Aventis US LLC was the agent of Defendant Sanofi S.A. and its wholly-owned subsidiary Defendant Aventis-Pharma S.A. – the patent-holder of docetaxel (TAXOTERE®) for purposes of marketing, advertising, soliciting purchases, and selling docetaxel (TAXOTERE®) in the State of New Jersey.

40. At all times relevant hereto, Defendant Sanofi-Aventis US LLC was the alter ego of Defendant Sanofi S.A. and its wholly-owned subsidiary Defendant Aventis-Pharma S.A. – the patent-holder of docetaxel (TAXOTERE®) for purposes of marketing, advertising, soliciting purchases, and selling docetaxel (TAXOTERE®) in the State of New Jersey.

41. Plaintiff's use of, and ultimately injury by, docetaxel (TAXOTERE®) in the State of Alabama was caused by actions undertaken in New Jersey and was not an isolated occurrence, but arose from the purposeful efforts of Defendant Sanofi S.A. and Defendant Aventis-Pharma S.A., through Defendant Sanofi S.A.'s and Defendant Aventis-Pharma S.A.'s agent Defendant Sanofi-Aventis US LLC, to create and serve the market for docetaxel (TAXOTERE®) by the marketing, advertising, soliciting purchases, and selling of docetaxel (TAXOTERE®) from their offices in New Jersey.

42. Defendant Sanofi S.A. and Defendant Aventis-Pharma S.A. placed docetaxel (TAXOTERE®) into the stream of commerce with the intent that it would be marketed,

advertised, and sold by their agent and/or alter ego Defendant Sanofi-Aventis US LLC in the State of New Jersey.

43. At all times relevant hereto, the activities of Defendant Sanofi-Aventis US LLC were of such character as to amount to doing the business of Defendant Sanofi S.A. and Defendant Aventis-Pharma S.A. – the patent-holder of docetaxel (TAXOTERE®) – in the State of New Jersey.

**HOSPIRA WORLDWIDE, INC.**

44. Defendant Hospira Worldwide, Inc ("Hospira"). is a foreign nonprofit corporation formed under the laws of the State of Delaware, with a principal office street address of: 275 N. Field Drive, Lake Forest, Illinois 60045. Defendant Hospira is not a citizen or resident of the State of New Jersey.

45. This Court has personal jurisdiction over Defendant Hospira, which is licensed to conduct and/or is systematically and continuously conducting business in the State of New Jersey, including, but not limited to, the marketing, advertising, selling, and distributing of drugs, including a generic non-bioequivalent of docetaxel (TAXOTERE®) – Docetaxel-Anhydrous – to the residents in this State.

46. As set forth *infra*, Plaintiff alleges that Defendant Hospira and/or its agents engaged in the commission of a tortious act within the State of New Jersey.

47. As alleged *infra*, Plaintiff's injuries complained of in the instant civil action "arise out of" or "relate to" Hospira's contacts with the State of New Jersey.

48. Here, Defendant Hospira has sufficient "minimum contacts" with the State of New Jersey, so that the imposition of jurisdiction would not violate "traditional notions of fair play and substantial justice."

49. At all times relevant hereto, Defendant Hospira is registered with the New Jersey Secretary of State to do business in the State of New Jersey and has a registered agent in the State of New Jersey.

50. At all times relevant hereto, Defendant Hospira has employees in the State of New Jersey.

51. At all times relevant hereto, Defendant Hospira actively marketed Docetaxel-Anhydrous within the State of New Jersey by providing marketing information about the drug to medical doctors and providers of medical treatment throughout the State of New Jersey.

52. At all times relevant hereto, Defendant Hospira solicited purchases of Docetaxel-Anhydrous within the State of New Jersey by soliciting purchases of Docetaxel-Anhydrous from medical doctors and providers of medical treatment throughout the State of New Jersey.

53. Upon information and belief, at all times relevant hereto, Defendant Hospira provided product information about Docetaxel-Anhydrous and samples of Docetaxel-Anhydrous to, medical doctors and providers of medical treatment throughout the State of New Jersey.

54. At all times relevant hereto, Defendant Hospira sold Docetaxel-Anhydrous within the State of New Jersey by selling the drug to medical doctors and providers of medical treatment throughout the State of New Jersey.

55. At all times relevant hereto, Defendant Hospira shipped Docetaxel-Anhydrous to the State of New Jersey by shipping the drug to medical doctors and providers of medical treatment throughout the State of New Jersey.

56. At all times relevant hereto, Defendant Hospira expected that Docetaxel-Anhydrous would be sold, purchased, and used in the State of New Jersey.

57. At all times relevant hereto, Defendant Hospira purposefully directed its activities towards the State of New Jersey.

58. At all times relevant hereto, Defendant Hospira exercised the privilege of conducting business in the State of New Jersey.

59. At all times relevant hereto, Defendant Hospira enjoyed the benefits and protections of the laws of the State of New Jersey.

60. At all times relevant hereto, Defendant Hospira's activities in the State of New Jersey were neither irregular nor casual; rather, those activities were systematic and continuous.

61. Defendant Hospira had fair warning that it might be subject to personal jurisdiction in the State of New Jersey and that it might be brought into court in the State of New Jersey with respect to its systematic and continuous activities involved with the marketing, advertising, solicitation of purchases, and sales of Docetaxel-Anhydrous in the State of New Jersey.

62. Specific personal jurisdiction over Defendant Hospira in the State of New Jersey is reasonable.

63. There is no burden on Defendant Hospira in litigating the instant case in New Jersey as Defendant Hospira is already licensed to do business in the State of New Jersey, has a

registered agent in the State of New Jersey, regularly systematically and continuously solicits and conducts business in the State of New Jersey, and already enjoys the benefits of the protections of the laws of the State of New Jersey.

64. Plaintiff has a substantial interest in containing convenient and effective relief in the State of New Jersey. On the other hand, if personal jurisdiction does not lie in New Jersey, Plaintiff will be forced to litigate her case(s) in France and/or the state of incorporation of each individual Defendant.

65. The shared interest of the several States in furthering fundamental substantive social policies is maximized by having personal jurisdiction over Defendant Hospira lie in the State of New Jersey; to wit, the State of New Jersey – just like the other States – has a strong interest in seeing that its citizens who are afflicted by crippling diseases such as cancer are protected from the tortious acts of nonresident corporations such as Defendant Hospira who purposefully direct the sale of cancer treatment drugs such as Docetaxel-Anhydrous into the State.

## SUN PHARMA GLOBAL INC.

66. Defendant Sun Pharma Global Inc ("Sun Pharma"). is a foreign corporation with a principal office business address of International Trust Building, Road Town, British Virgin Islands and principal mailing address of P.O. Box 659, Road Town, British Virgin Islands. Defendant Sun Pharma is not a citizen or resident of the State of New Jersey

67. This Court has personal jurisdiction over Defendant Sun Pharma, which is licensed to conduct and/or is systematically and continuously conducting business in the State of New Jersey, including, but not limited to, the marketing, advertising, selling, and distributing of

drugs, including a generic non-bioequivalent of docetaxel (TAXOTERE®) - Docefrez - to the residents in this State.

68. As set forth *infra*, Plaintiff alleges that Defendant Sun Pharma and/or its agents engaged in the commission of a tortious act within the State of New Jersey.

69. Here, Defendant Sun Pharma has sufficient “minimum contacts” with the State of New jErsey, so that the imposition of jurisdiction would not violate “traditional notions of fair play and substantial justice.”

70. At all times relevant hereto, Defendant Sun Pharma is registered with the New Jersey Secretary of State to do business in the State of New Jersey and has a registered agent in the State of New Jersey.

71. At all times relevant hereto, Defendant Sun Pharma has employees in the State of New Jersey.

72. At all times relevant hereto, Defendant Sun Pharma actively marketed Docefrez within the State of New Jersey by providing marketing information about the drug to medical doctors and providers of medical treatment throughout the State of New Jersey.

73. At all times relevant hereto, Defendant Sun Pharma solicited purchases of Docefrez within the State of New Jersey by soliciting purchases of Docefrez from medical doctors and providers of medical treatment throughout the State of New Jersey.

74. Upon information and belief, at all times relevant hereto, Defendant Sun Pharma provided product information about Docefrez and samples of Docefrez to, medical doctors and providers of medical treatment throughout the State of New Jersey.

75. At all times relevant hereto, Defendant Sun Pharma sold Docefrez within the State of New Jersey by selling the drug to medical doctors and providers of medical treatment throughout the State of New Jersey.

76. At all times relevant hereto, Defendant Sun Pharma shipped Docefrez to the State of New Jersey by shipping the drug to medical doctors and providers of medical treatment throughout the State of New Jersey.

77. At all times relevant hereto, Defendant Sun Pharma expected that Docefrez would be sold, purchased, and used in the State of New Jersey.

78. At all times relevant hereto, Defendant Sun Pharma purposefully directed its activities towards the State of New Jersey.

79. At all times relevant hereto, Defendant Sun Pharma exercised the privilege of conducting business in the State of New Jersey.

80. At all times relevant hereto, Defendant Sun Pharma enjoyed the benefits and protections of the laws of the State of New Jersey.

81. At all times relevant hereto, Defendant Sun Pharma's activities in the State of New Jersey were neither irregular nor casual; rather, those activities were systematic and continuous.

82. Defendant Sun Pharma had fair warning that it might be subject to personal jurisdiction in the State of New Jersey and that it might be brought into court in the State of New Jersey with respect to its systematic and continuous activities involved with the marketing, advertising, solicitation of purchases, and sales of Docefrez in the State of New Jersey.

83. Specific personal jurisdiction over Defendant Sun Pharma in the State of New Jersey is reasonable.

84. There is no burden on Defendant Sun Pharma in litigating the instant case in New Jersey as Defendant Sun Pharma is already licensed to do business in the State of New Jersey, has a registered agent in the State of New Jersey, regularly systematically and continuously solicits and conducts business in the State of New Jersey, and already enjoys the benefits of the protections of the laws of the State of New Jersey.

85. Plaintiff has a substantial interest in containing convenient and effective relief in the State of New Jersey.. On the other hand, if personal jurisdiction does not lie in New Jersey, Plaintiff will be forced to litigate her case(s) in France and/or the state of incorporation of each individual Defendant.

86. The interstate judicial system's interest in obtaining the most efficient resolution of controversies is maximized by having personal jurisdiction over Defendant Sun Pharma lie in the State of New Jersey.

87. The shared interest of the several States in furthering fundamental substantive social policies is maximized by having personal jurisdiction over Defendant Sun Pharma lie in the State of New Jersey; to wit, the State of New Jersey – just like the other States – has a strong interest in seeing that its citizens who are afflicted by crippling diseases such as cancer are protected from the tortious acts of nonresident corporations such as Defendant Sun Pharma who purposefully direct the sale of cancer treatment drugs such as Docefrez into the State.

**McKESSON CORPORATION d/b/a McKESSON PACKAGING**

88. Defendant McKesson Corporation d/b/a McKesson Packaging ("McKesson") is a foreign corporation formed under the laws of the State of Delaware with a principal office street address of One Post Street, San Francisco, California 94104. Defendant McKesson is not a citizen or resident of the State of New Jersey.

89. This Court has personal jurisdiction over Defendant McKesson, which is licensed to conduct and/or is systematically and continuously conducting business in the State of New Jersey, including, but not limited to, the marketing, advertising, selling, and distributing of drugs, including a generic non-bioequivalent of docetaxel (TAXOTERE®) - Docetaxel-Anhydrous – to the residents in this State.

90. As set forth *infra,* Plaintiff alleges that Defendant McKesson and/or its agents engaged in the commission of a tortious act within the State of New Jersey.

91. Here, Defendant McKesson has sufficient "minimum contacts" with the State of New Jersey, so that the imposition of jurisdiction would not violate "traditional notions of fair play and substantial justice."

92. At all times relevant hereto, Defendant McKesson is registered with the New Jersey Secretary of State to do business in the State of New Jersey and has a registered agent in the State of New Jersey.

93. At all times relevant hereto, Defendant McKesson has employees in the State of New Jersey.

94. At all times relevant hereto, Defendant McKesson actively marketed Docetaxel-Anhydrous within the State of New Jersey by providing marketing information about the drug to medical doctors and providers of medical treatment throughout the State of New Jersey.

95. At all times relevant hereto, Defendant McKesson solicited purchases of Docetaxel-Anhydrous within the State of New Jersey by soliciting purchases of Docetaxel-Anhydrous from medical doctors and providers of medical treatment throughout the State of New Jersey.

96. Upon information and belief, at all times relevant hereto, Defendant McKesson provided product information about Docetaxel-Anhydrous and samples of Docetaxel-Anhydrous to, medical doctors and providers of medical treatment throughout the State of New Jersey.

97. At all times relevant hereto, Defendant McKesson sold Docetaxel-Anhydrous within the State of New Jersey by selling the drug to medical doctors and providers of medical treatment throughout the State of New Jersey.

98. At all times relevant hereto, Defendant McKesson shipped Docetaxel-Anhydrous to the State of New Jersey by shipping the drug to medical doctors and providers of medical treatment throughout the State of New Jersey.

99. At all times relevant hereto, Defendant McKesson expected that Docetaxel-Anhydrous would be sold, purchased, and used in the State of New Jersey.

100. At all times relevant hereto, Defendant McKesson purposefully directed its activities towards the State of New Jersey.

101. At all times relevant hereto, Defendant McKesson exercised the privilege of conducting business in the State of New Jersey.

102. At all times relevant hereto, Defendant McKesson enjoyed the benefits and protections of the laws of the State of New Jersey.

103. At all times relevant hereto, Defendant McKesson's activities in the State of New Jersey were neither irregular nor casual; rather, those activities were systematic and continuous.

104. Defendant McKesson had fair warning that it might be subject to personal jurisdiction in the State of New Jersey and that it might be brought into court in the State of New Jersey with respect to its systematic and continuous activities involved with the marketing, advertising, solicitation of purchases, and sales of McKesson in the State of New Jersey.

105. Specific personal jurisdiction over Defendant McKesson in the State of New Jersey is reasonable.

106. There is no burden on Defendant McKesson in litigating the instant case in New Jersey as Defendant McKesson is already licensed to do business in the State of New Jersey, has a registered agent in the State of New Jersey, regularly systematically and continuously solicits and conducts business in the State of New Jersey, and already enjoys the benefits of the protections of the laws of the State of New Jersey.

107. Plaintiff has a substantial interest in containing convenient and effective relief in the State of New Jersey. On the other hand, if personal jurisdiction does not lie in New Jersey, Plaintiff will be forced to litigate her case(s) in France and/or the state of incorporation of each individual Defendant.

108. The interstate judicial system's interest in obtaining the most efficient resolution of controversies is maximized by having personal jurisdiction over Defendant McKesson lie in the State of New Jersey

109. The shared interest of the several States in furthering fundamental substantive social policies is maximized by having personal jurisdiction over Defendant McKesson lie in the

State of New Jersey; to wit, the State of New Jersey – just like the other States – has a strong interest in seeing that its citizens who are afflicted by crippling diseases such as cancer are protected from the tortious acts of nonresident corporations such as Defendant McKesson who purposefully direct the sale of cancer treatment drugs such as Docetaxel-Anhydrous into the State.

**SANDOZ INC.**

110. Defendant Sandoz, Inc. ("Sandoz") is a foreign corporation formed under the laws of the State of Colorado with a principal office address of 100 College Road West, Princeton, New Jersey 08540.

111. This Court has personal jurisdiction over Defendant Sandoz, which is licensed to conduct and/or is systematically and continuously conducting business in the State of New Jersey, including, but not limited to, the marketing, advertising, selling, and distributing of drugs, including a generic non-bioequivalent of docetaxel (TAXOTERE®) - Docetaxel - to the residents in this State.

112. As set forth *infra*, Plaintiff alleges that Defendant Sandoz and/or its agents engaged in the commission of a tortious act within the State of New Jersey.

113. As alleged *infra*, Plaintiff's injuries complained of in the instant civil action "arise out of" or "relate to" Sandoz's contacts with the State of New Jersey.

114. Here, Defendant Sandoz has sufficient "minimum contacts" with the State of New Jersey, so that the imposition of jurisdiction would not violate "traditional notions of fair play and substantial justice."

115. At all times relevant hereto, Defendant Sandoz is registered with the New Jersey Secretary of State to do business in the State of New Jersey and has a registered agent in the State of New Jersey.

116. At all times relevant hereto, Defendant Sandoz has employees in the State of New Jersey.

117. At all times relevant hereto, Defendant Sandoz actively marketed Docetaxel within the State of New Jersey and made marketing decisions within the State of New Jersey by providing marketing information about the drug to medical doctors and providers of medical treatment throughout the United States.

118. At all times relevant hereto, Defendant Sandoz solicited purchases of Docetaxel from within the State of New Jersey by soliciting purchases of Docetaxel from medical doctors and providers of medical treatment throughout the State of New Jersey.

119. Upon information and belief, at all times relevant hereto, Defendant Sandoz provided and produced product information about Docetaxel and samples of Docetaxel to, medical doctors and providers of medical treatment throughout the State of New Jersey.

120. At all times relevant hereto, Defendant Sandoz sold Docetaxel within the State of New Jersey by selling the drug to medical doctors and providers of medical treatment throughout the State of New Jersey.

121. At all times relevant hereto, Defendant Sandoz shipped Docetaxel to the State of New Jersey by shipping the drug to medical doctors and providers of medical treatment throughout the State of New Jersey.

122. At all times relevant hereto, Defendant Sandoz expected that Docetaxel would be sold, purchased, and used in the State of New Jersey.

123. At all times relevant hereto, Defendant Sandoz purposefully directed its activities towards the State of New Jersey.

124. At all times relevant hereto, Defendant Sandoz exercised the privilege of conducting business in the State of New Jersey.

125. At all times relevant hereto, Defendant Sandoz enjoyed the benefits and protections of the laws of the State of New Jersey.

126. At all times relevant hereto, Defendant Sandoz's activities in the State of New Jersey were neither irregular nor casual; rather, those activities were systematic and continuous.

127. Defendant Sandoz had fair warning that it might be subject to personal jurisdiction in the State of New Jersey and that it might be brought into court in the State of New Jersey with respect to its systematic and continuous activities involved with the marketing, advertising, solicitation of purchases, and sales of Docetaxel in the State of New Jersey.

128. Specific personal jurisdiction over Defendant Sandoz in the State of New Jersey is reasonable.

129. There is no burden on Defendant Sandoz in litigating the instant case in New Jersey as Defendant Sandoz is already licensed to do business in the State of New Jersey, has a registered agent in the State of New Jersey, regularly systematically and continuously solicits and conducts business in the State of New Jersey, and already enjoys the benefits of the protections of the laws of the State of New Jersey.

130. Plaintiff has a substantial interest in containing convenient and effective relief in the State of New Jersey – the place where Defendant Sandoz's purposeful activities ultimately resulted in her injuries. On the other hand, if personal jurisdiction does not lie in New Jersey Plaintiff will be forced to litigate her case(s) in France and/or the state of incorporation of each individual Defendant.

131. The interstate judicial system's interest in obtaining the most efficient resolution of controversies is maximized by having personal jurisdiction over Defendant Sandoz lie in the State of New Jersey as the sale of the Docetaxel originated in the State of New Jersey, Plaintiff suffered injury caused by behavior in the State of New Jersey, and numerous witnesses to both the cause of the injury to, and harm suffered by, Plaintiff reside in the State of New Jersey.

132. The shared interest of the several States in furthering fundamental substantive social policies is maximized by having personal jurisdiction over Defendant Sandoz lie in the State of New Jersey; to wit, the State of New Jersey – just like the other States – has a strong interest in seeing that its citizens who are afflicted by crippling diseases such as cancer are protected from the tortious acts of nonresident corporations such as Defendant Sandoz who purposefully direct the sale of cancer treatment drugs such as Docetaxel into the State.

## **ACCORD HEALTHCARE INC.**

133. Defendant Accord Healthcare, Inc. ("Accord") is a foreign corporation formed under the laws of North Carolina with a principal office street address of 1009 Slater Road, Suite 210-B, Durham, North Carolina 27703. Defendant Accord is not a citizen or resident of the State of New Jersey.

134. This Court has personal jurisdiction over Defendant Accord, which is licensed to conduct and/or is systematically and continuously conducting business in the State of New Jersey, including, but not limited to, the marketing, advertising, selling, and distributing of drugs, including a generic non-bioequivalent of docetaxel (TAXOTERE®) – Docetaxel and/or Docetaxel-Anhydrous – to the residents in this State.

135. As set forth *infra*, Plaintiff alleges that Defendant Accord and/or its agents engaged in the commission of a tortious act within the State of New Jersey.

136. Here, Defendant Accord has sufficient "minimum contacts" with the State of New Jersey, so that the imposition of jurisdiction would not violate "traditional notions of fair play and substantial justice."

137. At all times relevant hereto, Defendant Accord is registered with the New Jersey Secretary of State to do business in the State of New Jersey and has a registered agent in the State of New Jersey.

138. At all times relevant hereto, Defendant Accord has employees in the State of New Jersey.

139. At all times relevant hereto, Defendant Accord actively marketed Docetaxel and/or Docetaxel-Anhydrous within the State of New Jersey by providing marketing information about the drug to medical doctors and providers of medical treatment throughout the State of New Jersey.

140. At all times relevant hereto, Defendant Accord solicited purchases of Docetaxel and/or Docetaxel-Anhydrous within the State of New Jersey by soliciting purchases of Docetaxel

and/or Docetaxel-Anhydrous from medical doctors and providers of medical treatment throughout the State of New Jersey.

141. Upon information and belief, at all times relevant hereto, Defendant Accord provided product information about Docetaxel and/or Docetaxel-Anhydrous and samples of Docetaxel and/or Docetaxel-Anhydrous to, medical doctors and providers of medical treatment throughout the State of New Jersey.

142. At all times relevant hereto, Defendant Accord sold Docetaxel and/or Docetaxel-Anhydrous within the State of New Jersey by selling the drug to medical doctors and providers of medical treatment throughout the State of New Jersey.

143. At all times relevant hereto, Defendant Accord shipped Docetaxel and/or Docetaxel-Anhydrous to the State of New Jersey by shipping the drug to medical doctors and providers of medical treatment throughout the State of New Jersey.

144. At all times relevant hereto, Defendant Accord expected that Docetaxel and/or Docetaxel-Anhydrous would be sold, purchased, and used in the State of New Jersey.

145. At all times relevant hereto, Defendant Accord purposefully directed its activities towards the State of New Jersey.

146. At all times relevant hereto, Defendant Accord exercised the privilege of conducting business in the State of New Jersey.

147. At all times relevant hereto, Defendant Accord enjoyed the benefits and protections of the laws of the State of New Jersey.

148. At all times relevant hereto, Defendant Accord’s activities in the State of New Jersey were neither irregular nor casual; rather, those activities were systematic and continuous.

149. Defendant Accord had fair warning that it might be subject to personal jurisdiction in the State of New Jersey and that it might be brought into court in the State of New Jersey with respect to its systematic and continuous activities involved with the marketing, advertising, solicitation of purchases, and sales of Docetaxel and/or Docetaxel-Anhydrous in the State of New Jersey.

150. Specific personal jurisdiction over Defendant Accord in the State of New Jersey is reasonable.

151. There is no burden on Defendant Accord in litigating the instant case in New Jersey as Defendant Accord is already licensed to do business in the State of New Jersey, has a registered agent in the State of New Jersey, regularly systematically and continuously solicits and conducts business in the State of New Jersey, and already enjoys the benefits of the protections of the laws of the State of New Jersey.

152. Plaintiff has a substantial interest in containing convenient and effective relief in the State of New Jersey. On the other hand, if personal jurisdiction does not lie in New Jersey Plaintiff will be forced to litigate her case(s) in France and/or the state of incorporation of each individual Defendant.

153. The interstate judicial system's interest in obtaining the most efficient resolution of controversies is maximized by having personal jurisdiction over Defendant Accord lie in the State of New Jersey

154. The shared interest of the several States in furthering fundamental substantive social policies is maximized by having personal jurisdiction over Defendant Accord lie in the State of New Jersey; to wit, the State of New Jersey – just like the other States – has a strong

interest in seeing that its citizens who are afflicted by crippling diseases such as cancer are protected from the tortious acts of nonresident corporations such as Defendant Accord who purposefully direct the sale of cancer treatment drugs such as Docetaxel and/or Docetaxel-Anhydrous into the State.

**PFIZER, INC.**

155. Defendant Pfizer, Inc. ("Pfizer") is an entity organized in a state other than the State of New Jersey, and Defendant Pfizer has its principal place of business in a state other than the State of New Jersey, and Defendant Pfizer is not a citizen or resident of the State of New Jersey.

156. This Court has personal jurisdiction over Defendant Pfizer, which is licensed to conduct and/or is systematically and continuously conducting business in the State of New Jersey, including, but not limited to, the marketing, advertising, selling, and distributing of drugs, including a generic non-bioequivalent of docetaxel (TAXOTERE®) - Docetaxel-Anhydrous - to the residents in this State.

157. As set forth *infra*, Plaintiff alleges that Defendant Pfizer and/or its agents engaged in the commission of a tortious act within the State of New Jersey.

158. Here, Defendant Pfizer has sufficient "minimum contacts" with the State of New Jersey, so that the imposition of jurisdiction would not violate "traditional notions of fair play and substantial justice."

159. At all times relevant hereto, Defendant Pfizer is registered with the New Jersey Secretary of State to do business in the State of New Jersey and has a registered agent in the State of New Jersey.

160. At all times relevant hereto, Defendant Pfizer has employees in the State of New Jersey.

161. At all times relevant hereto, Defendant Pfizer actively marketed Docetaxel-Anhydrous within the State of New Jersey by providing marketing information about the drug to medical doctors and providers of medical treatment throughout the State of New Jersey.

162. At all times relevant hereto, Defendant Pfizer solicited purchases of Docetaxel-Anhydrous within the State of New Jersey by soliciting purchases of Docetaxel-Anhydrous from medical doctors and providers of medical treatment throughout the State of New Jersey.

163. Upon information and belief, at all times relevant hereto, Defendant Pfizer provided product information about Docetaxel-Anhydrous and samples of Docetaxel-Anhydrous to, medical doctors and providers of medical treatment throughout the State of New Jersey.

164. At all times relevant hereto, Defendant Pfizer sold Docetaxel-Anhydrous within the State of New Jersey by selling the drug to medical doctors and providers of medical treatment throughout the State of New Jersey.

165. At all times relevant hereto, Defendant Pfizer shipped Docetaxel-Anhydrous to the State of New Jersey by shipping the drug to medical doctors and providers of medical treatment throughout the State of New Jersey.

166. At all times relevant hereto, Defendant Pfizer expected that Docetaxel-Anhydrous would be sold, purchased, and used in the State of New Jersey.

167. At all times relevant hereto, Defendant Pfizer purposefully directed its activities towards the State of New Jersey.

168. At all times relevant hereto, Defendant Pfizer exercised the privilege of conducting business in the State of New Jersey.

169. At all times relevant hereto, Defendant Pfizer enjoyed the benefits and protections of the laws of the State of New Jersey.

170. At all times relevant hereto, Defendant Pfizer's activities in the State of New Jersey were neither irregular nor casual; rather, those activities were systematic and continuous.

171. Defendant Pfizer had fair warning that it might be subject to personal jurisdiction in the State of New Jersey and that it might be brought into court in the State of New Jersey with respect to its systematic and continuous activities involved with the marketing, advertising, solicitation of purchases, and sales of Docetaxel-Anhydrous in the State of New Jersey.

172. Specific personal jurisdiction over Defendant Pfizer in the State of New Jersey is reasonable.

173. There is no burden on Defendant Pfizer in litigating the instant case in New Jersey as Defendant Pfizer is already licensed to do business in the State of New Jersey, has a registered agent in the State of New Jersey, regularly systematically and continuously solicits and conducts business in the State of New Jersey, and already enjoys the benefits of the protections of the laws of the State of New Jersey.

174. Plaintiff has a substantial interest in containing convenient and effective relief in the State of New Jersey. On the other hand, if personal jurisdiction does not lie in New Jersey, Plaintiff will be forced to litigate her case(s) in France and/or the state of incorporation of each individual Defendant.

175. The interstate judicial system's interest in obtaining the most efficient resolution of controversies is maximized by having personal jurisdiction over Defendant Pfizer lie in the State of New Jersey as the sale of the Docetaxel-Anhydrous occurred in the State of New Jersey..

176. The shared interest of the several States in furthering fundamental substantive social policies is maximized by having personal jurisdiction over Defendant Pfizer lie in the State of New Jersey; to wit, the State of New Jersey – just like the other States – has a strong interest in seeing that its citizens who are afflicted by crippling diseases such as cancer are protected from the tortious acts of nonresident corporations such as Defendant Pfizer who purposefully direct the sale of cancer treatment drugs such as Docetaxel-Anhydrous into the State.

**ACTAVIS PHARMA, INC.**

177. Defendant Actavis Pharma, Inc. ("Actavis Pharma") is an entity organized in a state other than the State of New Jersey, and Defendant Actavis Pharma has its principal place of business in a state other than the State of New Jersey, and Defendant Actavis Pharma is not a citizen or resident of the State of New Jersey.

178. This Court has personal jurisdiction over Defendant Actavis Pharma, which is licensed to conduct and/or is systematically and continuously conducting business in the State of New Jersey, including, but not limited to, the marketing, advertising, selling, and distributing of drugs, including a generic non-bioequivalent of docetaxel (TAXOTERE®) - Docetaxel-Anhydrous - to the residents in this State.

179. As set forth *infra*, Plaintiff alleges that Defendant Actavis Pharma and/or its agents engaged in the commission of a tortious act within the State of New Jersey.

180. Here, Defendant Actavis Pharma has sufficient "minimum contacts" with the State of New Jersey, so that the imposition of jurisdiction would not violate "traditional notions of fair play and substantial justice."

181. At all times relevant hereto, Defendant Actavis Pharma is registered with the New Jersey Secretary of State to do business in the State of New Jersey and has a registered agent in the State of New Jersey.

182. At all times relevant hereto, Defendant Actavis Pharma has employees in the State of New Jersey.

183. At all times relevant hereto, Defendant Actavis Pharma actively marketed Docetaxel-Anhydrous within the State of New Jersey by providing marketing information about the drug to medical doctors and providers of medical treatment throughout the State of New Jersey.

184. At all times relevant hereto, Defendant Actavis Pharma solicited purchases of Docetaxel-Anhydrous within the State of New Jersey by soliciting purchases of Docetaxel-Anhydrous from medical doctors and providers of medical treatment throughout the State of New Jersey.

185. Upon information and belief, at all times relevant hereto, Defendant Actavis Pharma provided product information about Docetaxel-Anhydrous and samples of Docetaxel-Anhydrous to, medical doctors and providers of medical treatment throughout the State of New Jersey.

186. At all times relevant hereto, Defendant Actavis Pharma sold Docetaxel-Anhydrous within the State of New Jersey by selling the drug to medical doctors and providers of medical treatment throughout the State of New Jersey.

187. At all times relevant hereto, Defendant Actavis Pharma shipped Docetaxel-Anhydrous to the State of New Jersey by shipping the drug to medical doctors and providers of medical treatment throughout the State of New Jersey.

188. At all times relevant hereto, Defendant Actavis Pharma expected that Docetaxel-Anhydrous would be sold, purchased, and used in the State of New Jersey.

189. At all times relevant hereto, Defendant Actavis Pharma purposefully directed its activities towards the State of New Jersey.

190. At all times relevant hereto, Defendant Actavis Pharma exercised the privilege of conducting business in the State of New Jersey.

191. At all times relevant hereto, Defendant Actavis Pharma enjoyed the benefits and protections of the laws of the State of New Jersey.

192. At all times relevant hereto, Defendant Actavis Pharma’s activities in the State of New Jersey were neither irregular nor casual; rather, those activities were systematic and continuous.

193. Defendant Actavis Pharma had fair warning that it might be subject to personal jurisdiction in the State of New Jersey and that it might be brought into court in the State of New Jersey with respect to its systematic and continuous activities involved with the marketing, advertising, solicitation of purchases, and sales of Docetaxel-Anhydrous in the State of New Jersey.

194. Specific personal jurisdiction over Defendant Actavis Pharma in the State of New Jersey is reasonable.

195. There is no burden on Defendant Actavis Pharma in litigating the instant case in New Jersey as Defendant Actavis Pharma is already licensed to do business in the State of New Jersey, has a registered agent in the State of New Jersey, regularly systematically and continuously solicits and conducts business in the State of New Jersey, and already enjoys the benefits of the protections of the laws of the State of New Jersey.

196. Plaintiff has a substantial interest in containing convenient and effective relief in the State of New Jersey. On the other hand, if personal jurisdiction does not lie in New Jersey, Plaintiff will be forced to litigate her case(s) in France and/or the state of incorporation of each individual Defendant.

197. The interstate judicial system's interest in obtaining the most efficient resolution of controversies is maximized by having personal jurisdiction over Defendant Actavis Pharma lie in the State of New Jersey.

198. The shared interest of the several States in furthering fundamental substantive social policies is maximized by having personal jurisdiction over Defendant Actavis Pharma lie in the State of New Jersey; to wit, the State of New Jersey – just like the other States – has a strong interest in seeing that its citizens who are afflicted by crippling diseases such as cancer are protected from the tortious acts of nonresident corporations such as Defendant Actavis Pharma who purposefully direct the sale of cancer treatment drugs such as Docetaxel-Anhydrous into the State.

**NORTHSTAR RX LLC**

199. Defendant Northstar Rx LLC ("NorthStar") is an entity organized in a state other than the State of New Jersey, and Defendant NorthStar has its principal place of business in a state other than the State of New Jersey, and Defendant NorthStar is not a citizen or resident of the State of New Jersey.

200. This Court has personal jurisdiction over Defendant NorthStar, which is licensed to conduct and/or is systematically and continuously conducting business in the State of New Jersey, including, but not limited to, the marketing, advertising, selling, and distributing of drugs, including a generic non-bioequivalent of docetaxel (TAXOTERE®) - Docetaxel-Anhydrous - to the residents in this State.

201. As set forth *infra*, Plaintiff alleges that Defendant NorthStar and/or its agents engaged in the commission of a tortious act within the State of New Jersey.

202. Here, Defendant NorthStar has sufficient "minimum contacts" with the State of New Jersey, so that the imposition of jurisdiction would not violate "traditional notions of fair play and substantial justice."

203. At all times relevant hereto, Defendant NorthStar is registered with the New Jersey Secretary of State to do business in the State of New Jersey and has a registered agent in the State of New Jersey.

204. At all times relevant hereto, Defendant NorthStar has employees in the State of New Jersey.

205. At all times relevant hereto, Defendant NorthStar actively marketed Docetaxel-Anhydrous within the State of New Jersey by providing marketing information about the drug to medical doctors and providers of medical treatment throughout the State of New Jersey.

206. At all times relevant hereto, Defendant NorthStar solicited purchases of Docetaxel-Anhydrous within the State of New Jersey by soliciting purchases of Docetaxel-Anhydrous from medical doctors and providers of medical treatment throughout the State of New Jersey.

207. Upon information and belief, at all times relevant hereto, Defendant NorthStar provided product information about Docetaxel-Anhydrous and samples of Docetaxel-Anhydrous to, medical doctors and providers of medical treatment throughout the State of New Jersey.

208. At all times relevant hereto, Defendant NorthStar sold Docetaxel-Anhydrous within the State of New Jersey by selling the drug to medical doctors and providers of medical treatment throughout the State of New Jersey.

209. At all times relevant hereto, Defendant NorthStar shipped Docetaxel-Anhydrous to the State of New Jersey by shipping the drug to medical doctors and providers of medical treatment throughout the State of New Jersey.

210. At all times relevant hereto, Defendant NorthStar expected that Docetaxel-Anhydrous would be sold, purchased, and used in the State of New Jersey.

211. At all times relevant hereto, Defendant NorthStar purposefully directed its activities towards the State of New Jersey.

212. At all times relevant hereto, Defendant NorthStar exercised the privilege of conducting business in the State of New Jersey.

213. At all times relevant hereto, Defendant NorthStar enjoyed the benefits and protections of the laws of the State of New Jersey.

214. At all times relevant hereto, Defendant NorthStar's activities in the State of New Jersey were neither irregular nor casual; rather, those activities were systematic and continuous.

215. Defendant NorthStar had fair warning that it might be subject to personal jurisdiction in the State of New Jersey and that it might be brought into court in the State of New Jersey with respect to its systematic and continuous activities involved with the marketing, advertising, solicitation of purchases, and sales of Docetaxel-Anhydrous in the State of New Jersey.

216. Specific personal jurisdiction over Defendant NorthStar in the State of New Jersey is reasonable.

217. There is no burden on Defendant NorthStar in litigating the instant case in New Jersey as Defendant NorthStar is already licensed to do business in the State of New Jersey, has a registered agent in the State of New Jersey, regularly systematically and continuously solicits and conducts business in the State of New Jersey, and already enjoys the benefits of the protections of the laws of the State of New Jersey.

218. Plaintiff has a substantial interest in containing convenient and effective relief in the State of New Jersey – the place where Defendant NorthStar's purposeful activities ultimately resulted in her injuries. On the other hand, if personal jurisdiction does not lie in New Jersey Plaintiff will be forced to litigate her case(s) in France and/or the state of incorporation of each individual Defendant.

219. The interstate judicial system's interest in obtaining the most efficient resolution of controversies is maximized by having personal jurisdiction over Defendant NorthStar lie in the State of New Jersey

220. The shared interest of the several States in furthering fundamental substantive social policies is maximized by having personal jurisdiction over Defendant NorthStar lie in the State of New Jersey; to wit, the State of New Jersey – just like the other States – has a strong interest in seeing that its citizens who are afflicted by crippling diseases such as cancer are protected from the tortious acts of nonresident corporations such as Defendant NorthStar who purposefully direct the sale of cancer treatment drugs such as Docetaxel-Anhydrous into the State.

**EAGLE PHARMACEUTICALS, INC.**

221. Defendant Eagle Pharmaceuticals, Inc. ("Eagle Pharmaceuticals") is an entity organized in a state other than the State of New Jersey, and Defendant Eagle Pharmaceuticals has its principal place of business in a state other than the State of New Jersey, and Defendant Eagle Pharmaceuticals is not a citizen or resident of the State of New Jersey.

222. This Court has personal jurisdiction over Defendant Eagle Pharmaceuticals, which is licensed to conduct and/or is systematically and continuously conducting business in the State of New Jersey, including, but not limited to, the marketing, advertising, selling, and distributing of drugs, including a generic non-bioequivalent of docetaxel (TAXOTERE®) - Docetaxel - to the residents in this State.

223. As set forth *infra*, Plaintiff alleges that Defendant Eagle Pharmaceuticals and/or its agents engaged in the commission of a tortious act within the State of New Jersey.

224. Here, Defendant Eagle Pharmaceuticals has sufficient "minimum contacts" with the State of New Jersey, so that the imposition of jurisdiction would not violate "traditional notions of fair play and substantial justice."

225. At all times relevant hereto, Defendant Eagle Pharmaceuticals is registered with the New Jersey Secretary of State to do business in the State of New Jersey and has a registered agent in the State of New Jersey.

226. At all times relevant hereto, Defendant Eagle Pharmaceuticals has employees in the State of New Jersey.

227. At all times relevant hereto, Defendant Eagle Pharmaceuticals actively marketed Docetaxel within the State of New Jersey by providing marketing information about the drug to medical doctors and providers of medical treatment throughout the State of New Jersey.

228. At all times relevant hereto, Defendant Eagle Pharmaceuticals solicited purchases of Docetaxel within the State of New Jersey by soliciting purchases of Docetaxel from medical doctors and providers of medical treatment throughout the State of New Jersey.

229. Upon information and belief, at all times relevant hereto, Defendant Eagle Pharmaceuticals provided product information about Docetaxel and samples of Docetaxel to, medical doctors and providers of medical treatment throughout the State of New Jersey.

230. At all times relevant hereto, Defendant Eagle Pharmaceuticals sold Docetaxel within the State of New Jersey by selling the drug to medical doctors and providers of medical treatment throughout the State of New Jersey.

231. At all times relevant hereto, Defendant Eagle Pharmaceuticals shipped Docetaxel to the State of New Jersey by shipping the drug to medical doctors and providers of medical treatment throughout the State of New Jersey.

232. At all times relevant hereto, Defendant Eagle Pharmaceuticals expected that Docetaxel would be sold, purchased, and used in the State of New Jersey.

233. At all times relevant hereto, Defendant Eagle Pharmaceuticals purposefully directed its activities towards the State of New Jersey.

234. At all times relevant hereto, Defendant Eagle Pharmaceuticals exercised the privilege of conducting business in the State of New Jersey.

235. At all times relevant hereto, Defendant Eagle Pharmaceuticals enjoyed the benefits and protections of the laws of the State of New Jersey.

236. At all times relevant hereto, Defendant Eagle Pharmaceuticals's activities in the State of New Jersey were neither irregular nor casual; rather, those activities were systematic and continuous.

237. Defendant Eagle Pharmaceuticals had fair warning that it might be subject to personal jurisdiction in the State of New Jersey and that it might be brought into court in the State of New Jersey with respect to its systematic and continuous activities involved with the marketing, advertising, solicitation of purchases, and sales of Docetaxel in the State of New Jersey.

238. Specific personal jurisdiction over Defendant Eagle Pharmaceuticals in the State of New Jersey is reasonable.

239. There is no burden on Defendant Eagle Pharmaceuticals in litigating the instant case in New Jersey as Defendant Eagle Pharmaceuticals is already licensed to do business in the State of New Jersey, has a registered agent in the State of New Jersey, regularly systematically and continuously solicits and conducts business in the State of New Jersey, and already enjoys the benefits of the protections of the laws of the State of New Jersey.

240. Plaintiff has a substantial interest in containing convenient and effective relief in the State of New Jersey. Plaintiff will be forced to litigate her case(s) in France and/or the state of incorporation of each individual Defendant.

241. The interstate judicial system's interest in obtaining the most efficient resolution of controversies is maximized by having personal jurisdiction over Defendant Eagle Pharmaceuticals lie in the State of New Jersey.

242. The shared interest of the several States in furthering fundamental substantive social policies is maximized by having personal jurisdiction over Defendant Eagle Pharmaceuticals lie in the State of New Jersey; to wit, the State of New Jersey – just like the other States – has a strong interest in seeing that its citizens who are afflicted by crippling diseases such as cancer are protected from the tortious acts of nonresident corporations such as Defendant Eagle Pharmaceuticals who purposefully direct the sale of cancer treatment drugs such as Docetaxel into the State.

## VENUE

243. Venue is proper in New Jersey pursuant to 28 U.S.C. § 1391(a), because Defendants marketed, advertised, and distributed the dangerous product in this District; Plaintiff's harms, losses, and damages were caused by marketing, products and business decisions made by companies located in this District; Defendants do substantial business in the State of New Jersey and within this District; and at all times relevant hereto, Defendants developed, manufactured, promoted, marketed, distributed, warranted, and sold docetaxel (TAXOTERE®), and/or generic non-bioequivalents of same, in interstate commerce.

**DEFENDANTS SANOFI S.A., AVENTIS PHARMA S.A., AND SANOFI-AVENTIS U.S. LLC'S OWNERSHIP AND UNITY OF INTEREST**

244. Sanofi S.A. is a French multinational pharmaceutical parent company that operates worldwide through a complex, consolidated, and intermingled web of more than 400 wholly-owned subsidiaries, including Aventis Pharma S.A. and Sanofi-Aventis U.S. LLC. As of 2013, Sanofi S.A. was the world's fifth-largest pharmaceutical company by sales.

245. At all times relevant, Sanofi S.A. was engaged in the business of researching, analyzing, licensing, designing, formulating, compounding, patenting, testing, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging, advertising, and/or selling the prescription drug docetaxel (TAXOTERE®) through its numerous wholly-owned subsidiaries in the United States and throughout the world, including Defendants Aventis Pharma S.A. and Sanofi-Aventis U.S. LLC.

246. The predecessor to the entity now known as Sanofi S.A. was founded in 1973 as a subsidiary of Elf Aquitaine, a French oil company subsequently acquired by Total, when Elf Aquitaine took control of the Labaz group pharmaceutical company. In 1993, Sanofi entered the U.S. pharmaceutical market by first partnering with and then later acquiring Sterling Winthrop and its prescription pharmaceutical business in 1994. Sanofi was incorporated under the laws of France in 1994 as a *société anonyme*.

247. Aventis was formed in 1999 when the French company Rhône-Poulenc S.A. merged with the German corporation Hoechst Marion Roussel, which itself was formed from the 1995 merger of Hoechst AG with Cassella, Roussel Uclaf, and Marion Merrell Dow. The merged company was based in Schiltigheim, near Strasbourg, France.

248. Sanofi-Aventis S.A. was formed in 2004 with the merger of Aventis and Sanofi-Synthélabo, each of which had previously been formed through mergers. Sanofi-Aventis changed its name to Sanofi S.A. on May 6, 2011, after receiving approval at its annual general meeting. The reason given by the company for the change was to make its name easier to pronounce in other countries such as China.

249. Sanofi S.A.'s shares are listed on the New York Stock Exchange and the NASDAQ Global Market. Sanofi S.A. is required by law to register its securities in the United States under section 12(g) of the Securities Exchange Act of 1934 on Form 20-F and to file its annual reports on Form 20-F.

250. According to Sanofi S.A.'s Form 20-F filed with the U.S. Securities and Exchange Commission for the fiscal year ended December 31, 2014, Sanofi S.A. owns 100% of the membership and voting interest of Sanofi-Aventis U.S. LLC. Therefore, Sanofi S.A. controls and directs the operations of Sanofi-Aventis U.S. LLC.

251. Sanofi-Aventis U.S. LLC, according to Sanofi S.A.'s Form 20-F, was formed on June 28, 2000 as a Delaware limited liability company whose principal activity was identified as "Pharmaceuticals."

252. Upon information and belief, Aventis Pharma S.A. was formed as a successor in interest to Rhone-Poulenc Rorer, S.A.

253. At all times material to this lawsuit, Defendants Sanofi S.A., Aventis Pharma S.A., and Sanofi-Aventis U.S. LLC were engaged in the business of, and/or were successors in interest to, entities engaged in the business of researching, analyzing, licensing, designing, formulating, compounding, testing, manufacturing, producing, processing, assembling,

inspecting, distributing, marketing, labeling, promoting, packaging, advertising, and/or selling the prescription drug docetaxel (TAXOTERE®) to the general public, including Plaintiff.

254. At all times material to this lawsuit, Defendants Sanofi S.A., Aventis Pharma S.A., and Sanofi-Aventis U.S. LLC were authorized to do business within the State of New Jersey; did in fact transact and conduct business in the State of New Jersey; derived substantial revenue from goods and products used in the State of New Jersey; and supplied docetaxel (TAXOTERE®) within the State of New Jersey.

255. At all relevant times, and as more fully set forth below, Defendants Sanofi S.A., Aventis Pharma S.A., and Sanofi-Aventis U.S. LLC acted in conjunction with other affiliated, related, jointly owned and/or controlled entities or subsidiaries, including each other, in the development, marketing, production, labeling, promoting, packaging, advertising, and/or selling of docetaxel (TAXOTERE®) to the general public, including Plaintiff. Defendants Sanofi S.A., Aventis Pharma S.A., and Sanofi-Aventis U.S. LLC acted jointly and/or as each other's agents, within the course and scope of the agency, with respect to the conduct alleged in this Complaint, such that any individuality and separateness between Defendants had ceased and these Defendants became the alter-ego of one another and are jointly-liable for their misconduct and wrongful acts as alleged herein.

256. As the corporate parent of these wholly-owned subsidiaries, Sanofi S.A. directs and controls the operations of Aventis Pharma S.A. and Sanofi-Aventis U.S. LLC. Accordingly, there exists, and at all relevant times herein existed, a unity of interest, ownership, and conduct between Sanofi S.A., Aventis Pharma S.A., and Sanofi-Aventis U.S. LLC with regard to the manufacture, distribution, development, testing, and labeling of the docetaxel (TAXOTERE®) in

question and with regard to other related conduct, such that any individuality and separateness between Defendants Sanofi S.A., Aventis Pharma S.A., and Sanofi-Aventis U.S. LLC had ceased and these Defendants became the alter-ego of one another.

257. Sanofi S.A., through its complicated web of various affiliates, wholly-owned subsidiaries, and predecessor companies, including Aventis Pharma S.A. and Sanofi-Aventis U.S. LLC, has been directly involved in and has overseen the invention, development, clinical trials, and strategy for marketing, distributing, selling, and promoting Taxotere® (docetaxel) throughout the world and in the United States. Sanofi S.A. markets Taxotere® (docetaxel) worldwide in over 100 different countries. When press releases are issued announcing the introduction, marketing, and distribution of Taxotere® (docetaxel) in a new country, the press releases are issued by Sanofi S.A., or before 2011 when Sanofi S.A. changed its name, by Sanofi-Aventis.

**DEFENDANTS SANOFI S.A., AVENTIS PHARMA S.A., AND SANOFI-AVENTIS U.S. LLC'S INVOLVEMENT IN THE DEVELOPMENT, PATENTING, TESTING, MARKETING, AND SALE OF TAXOTERE® (DOCETAXEL)**

258. Docetaxel (TAXOTERE®) is a drug used in the treatment of various forms of cancer, including but not limited to breast cancer. Docetaxel (TAXOTERE®) is a part of a family of drugs commonly referred to as Taxanes.

259. Taxanes are diterpenes produced by the plants of the genus Taxus (yews) featuring a taxadiene core. Taxanes are widely used as chemotherapy agents. Taxane agents include paclitaxel (TAXOL®) and docetaxel (TAXOTERE®). Taxane agents also exist as cabazitaxel and in generic forms as well.

260. Paclitaxel (TAXOL®), which was developed, manufactured, and distributed by Bristol-Myers Squibb and is the main competitor drug to docetaxel (TAXOTERE®), was first approved by the U.S. Food and Drug Administration (FDA) in December 1992.

261. The drug and chemical compound that would become known as docetaxel (TAXOTERE®) was invented and developed by Michel Colin, Daniel Guenard, Francoise Gueritte–Voegelein, and Pierre Potier of Rhone-Poulence Santé. Docetaxel (TAXOTERE®) was designed as an increased potency Taxane.

262. The initial patent disclosing the formulation and computation of docetaxel (TAXOTERE®) was issued to Rhone-Poulence Santé and subsequently assigned to Defendant Aventis Pharma S.A in March 1989. Sanofi S.A. owns 100% of the shares or financial interest of Aventis Pharma S.A., and Sanofi S.A. therefore directs and controls the operations and activities of Aventis Pharma S.A. Since March 1989, Sanofi S.A., through its wholly-owned subsidiary, Aventis Pharma S.A., has controlled the development and been the owner, holder, or assignee of the patents related to docetaxel (TAXOTERE®).

263. In 1989, Sanofi issued the prior art publication F. Lavelle, *Experimental Properties of RP 56976*, a taxol derivative. RP 56976 was the number that Rhone-Polunec, Aventis Pharma S.A.'s predecessor, assigned to docetaxel.

264. Sanofi began enrolling patients in Phase I clinical testing trials on June 21, 1990. The study reporting on these trials was called the "TAX 001" study, which continued until May 13, 1992. The results from the TAX 001 study were reported on May 24, 1994. Accordingly, Sanofi was not only involved in the patenting and assignment of the compound Taxotere® (docetaxel), but Sanofi was also directly involved in the clinical trials and testing of the

compound Taxotere® (docetaxel). Accordingly, Sanofi S.A. and Aventis Pharma S.A. have direct and personal knowledge of the results of those tests and Sanofi S.A., Aventis Pharma S.A., and Sanofi-Aventis U.S. LLC's decisions to withhold information and data from those tests from physicians, healthcare providers, patients, and Plaintiff in the United States.

265. Rhône-Poulenc Rorer S.A., before it was acquired by or merged into Aventis Pharma S.A., initially sought FDA approval for docetaxel (TAXOTERE®) in December 1994. The FDA's Oncologic Drugs Advisory Committee panel unanimously recommended the rejection of Rhône-Poulenc Rorer S.A.'s request for the approval of docetaxel (TAXOTERE®), because docetaxel (TAXOTERE®) was more toxic than its competing drug TAXOL®, which had already received FDA approval, and because more studies of docetaxel's side effects were needed.

266. Docetaxel (TAXOTERE®) was ultimately approved by the FDA on May 14, 1996. According to its product labeling, docetaxel (TAXOTERE®) was "indicated for the treatment of patients with locally advanced or metastatic breast cancer after failure of prior chemotherapy."

267. After the initial FDA approval, Defendants sought and were granted FDA approval for additional indications for docetaxel (TAXOTERE®). Based on self-sponsored clinical trials, Defendants claimed superiority over other chemotherapy products approved to treat breast cancer. Defendants' marketing claims included claims of superior efficacy over the lower potency Taxane product paclitaxel (TAXOL®), which was the primary competitor product to docetaxel (TAXOTERE®).

268. Contrary to Sanofi S.A., Aventis Pharma S.A., and Sanofi-Aventis U.S. LLC's claims of superior efficacy, post market surveillance has shown that the more potent and more toxic docetaxel (TAXOTERE®) does not in fact offer increased efficacy or benefits over other Taxanes, as Defendants have claimed and advertised. Defendants concealed the existence of studies from the FDA, physicians, and patients that refuted Defendants' claims.

269. A study of available clinical studies concerning the relative efficacy of Taxanes in the treatment of breast cancer, published in the August 2007 journal *Cancer Treatment Review*, concluded that no significant differences were found in the efficacy and outcomes obtained with TAXOTERE® (docetaxel) or TAXOL® (paclitaxel).

270. A study published in 2008 in the New England Journal of Medicine, titled *Weekly Paclitaxel in the Adjuvant Treatment of Breast Cancer*, concluded that TAXOL® (paclitaxel) was more effective than TAXOTERE® (docetaxel) for patients undergoing standard adjuvant chemotherapy with doxorubicin and cyclophosphamide.

271. Despite the publication of these studies, Sanofi S.A., Aventis Pharma S.A., and Sanofi-Aventis U.S. LLC continued to make false and misleading statements promoting the "superior efficacy" of docetaxel (TAXOTERE®) over the competing product paclitaxel (TAXOL®). In June 2008, Sanofi-Aventis utilized marketing and promotional materials for docetaxel (TAXOTERE®) at the annual meeting for the American Society of Clinical Oncology, comparing the efficacy of docetaxel (TAXOTERE®) versus paclitaxel (TAXOL®). Specifically, Sanofi-Aventis utilized a "reprint carrier," citing a clinical study published in the August 2005 edition of the Journal of Clinical Oncology ("JCO"). The 2005 JCO study concluded that "docetaxel (TAXOTERE®) demonstrated superior efficacy compared with

paclitaxel (TAXOL®), providing significant clinical benefit in terms of survival and time to disease progression, with a numerically higher response rate and manageable toxicities."

272. Whatever the merits of the 2005 JCO study may have been, Defendants' statements in the "reprint carrier" marketing the conclusions of the 2005 JCO study were false and/or misleading in light of the 2007 and 2008 studies finding that docetaxel (TAXOTERE®) was not more effective than paclitaxel (TAXOL®) in the treatment of breast cancer.

273. As a result of these false and misleading statements, in 2009, the FDA issued a warning letter to Sanofi-Aventis (the same company as Defendant Sanofi S.A. before Sanofi-Aventis changed its name in 2011) citing these unsubstantiated claims of superiority over paclitaxel stating:

> The Division of Drug Marketing, Advertising, and Communications (DDMAC) of the U.S. Food and Drug Administration (FDA) has reviewed a professional reprint carrier [US.DOC.07.04.078] for Taxotere (docetaxel) Injection Concentrate, Intravenous Infusion (Taxotere) submitted under cover of Form FDA 2253 by sanofi-aventis (SA) and obtained at the American Society of Clinical Oncology annual meeting in June 2008. The reprint carrier includes a reprint[1] from the Journal of Clinical Oncology, which describes the TAX 311 study. This reprint carrier is false or misleading because it presents unsubstantiated superiority claims and overstates the efficacy of Taxotere. Therefore, this material misbrands the drug in violation of the Federal Food, Drug, and Cosmetic Act (the Act), 21 U.S.C. 352(a) and 321(n). *Cf.* 21 CFR 202.1(e)(6)(i), (ii) & (e)(7)(ii).[2]

---

[1] Jones SE, Erban J, Overmoyer B, et al. Randomized phase III study of docetaxel compared with paclitaxel in metastatic breast cancer. *J Clin Oncol.* 2005;23(24):5542-51.

[2] Correspondence signed by Keith Olin, Pharm.D., Regulatory Review Officer in the FDA's Division of Drug Marketing, Advertising and Communications to MaryRose Salvacion, Director of US Regulatory Affairs Marketed Products at sanofi-aventis.

274. A Qui Tam lawsuit was also filed against Sanofi-Aventis and its affiliates in the United States District Court for the Eastern District of Pennsylvania by a former employee accusing Sanofi-Aventis and its affiliates of engaging in a fraudulent marketing scheme, paying kickbacks, and providing other unlawful incentives to entice physicians to use docetaxel (TAXOTERE®). *See U.S. ex rel. Gohil v. Sanofi-Aventis U.S. Inc.*, Civil Action No. 02-2964 (E.D. Pa. 2015).

275. Beginning in 1996, Sanofi S.A., Aventis Pharma S.A., and Sanofi-Aventis U.S. LLC and their predecessors and affiliates designed, directed, and/or engaged in a marketing scheme that promoted docetaxel (TAXOTERE®) for off-label uses not approved by the FDA. The scheme took two forms: first, Defendants trained and directed their employees to misrepresent the safety and effectiveness of the off-label use of Taxotere to expand the market for docetaxel (TAXOTERE®) in unapproved settings; and second, Defendants paid healthcare providers illegal kickbacks in the form of sham grants, speaking fees, travel, entertainment, sports and concert tickets, preceptorship fees, and free reimbursement assistance to incentivize healthcare providers to prescribe docetaxel (TAXOTERE®) for off-label uses. As a direct result of Defendants' fraudulent marketing scheme, Defendants dramatically increased revenue on sales of docetaxel (TAXOTERE®) from $424 million in 2000 to $1.4 billion in 2004. *U.S. ex rel. Gohil v. Sanofi-Aventis U.S. Inc.*, 96 F. Supp. 3d 504, 508 (E.D. Pa. 2015).

276. As a direct result of their wrongful conduct and illegal kickback schemes, Sanofi S.A., Aventis Pharma S.A., and Sanofi-Aventis U.S. LLC directly caused thousands of individuals to be exposed to docetaxel's (TAXOTERE®) increased toxicity as compared to other available less toxic products.

277. As a direct result of their aforementioned conduct, Sanofi S.A., Aventis Pharma S.A., and Sanofi-Aventis U.S. LLC caused thousands of individuals to be exposed to increased frequency and more severe side effects, including but not limited to disfiguring permanent alopecia (hair loss).

**DEFENDANTS'COVER UP IN THE UNITED STATES REGARDING THE CAUSAL RELATIONSHIP BETWEEN DOCETAXEL (TAXOTERE®) AND/OR THE GENERIC NON- BIOEQUIVALENTS OF SAMEAND PERMANENT DISFIGURING HAIR LOSS**

278. Although alopecia, or hair loss, is a common side effect related to chemotherapy drugs, permanent alopecia is not. Defendants, through their publications and marketing materials, misled Plaintiff, the public, and the medical community to believe that, as with other chemotherapy drugs that cause alopecia, patients' hair would grow back.

279. Defendants knew or should have known that the rate of permanent alopecia related to docetaxel (TAXOTERE®) and or the generic non-bioequivalents of same was far greater than with other products available to treat the same condition as Defendants' products.

280. Permanent baldness (permanent alopecia) is a disfiguring condition, especially for women. Women who experienced disfiguring permanent alopecia as a result of the use of docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same suffer great mental anguish as well as economic damages, including but not limited to loss of work or inability to work due to significant psychological damage.

281. Although women might accept the possibility of permanent baldness as a result of the use of docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same if no other product were available to treat their cancer, this was not the case. Before Defendants' wrongful

conduct resulted in thousands of women being exposed to the side effects of docetaxel (TAXOTERE®) or the generic non-bioequivalents of same, there were already similar products on the market that were at least as effective as docetaxel (TAXOTERE®) and did not subject female users to the same risk of disfiguring permanent alopecia as does docetaxel (TAXOTERE®).

282. Beginning in the late 1990's, Sanofi S.A. and Aventis Pharma S.A. sponsored and/or were aware of a study titled the GEICAM 9805 study. In 2005, Sanofi S.A. and Aventis Pharma S.A. knew that the GEICAM 9805 study demonstrated that 9.2% of patients who took docetaxel (TAXOTERE®) had persistent alopecia, or hair loss, for up to 10 years and 5 months, and in some cases longer, after taking docetaxel (TAXOTERE®). Sanofi S.A. and Aventis Pharma S.A. knowingly, intentionally, and wrongfully withheld these results contained in the GEICAM 9805 study from physicians, healthcare providers, patients, and Plaintiff in the United States.

283. Defendants knew or should have known that a Denver-based oncologist in the United States had observed that an increased percentage (6.3%) of his patients who had taken docetaxel (TAXOTERE®) suffered from permanent disfiguring hair loss for years after the patients had stop taking docetaxel (TAXOTERE®) in 2006. Sanofi S.A., Aventis Pharma S.A., and Sanofi-Aventis U.S. LLC chose to ignore the results of this study and failed to warn consumers and the medical community as did the rest of Defendants when they developed generic non- bioequivalents of docetaxel (TAXOTERE®).

284. Despite Defendants' knowledge of the relevant findings from the GEICAM 9805 study, as well as reports from patients who had taken docetaxel (TAXOTERE®) and/or the

generic non-bioequivalents of same and suffered from permanent disfiguring hair loss, Defendants failed to provide accurate information and proper warnings to physicians, healthcare providers, and patients in the United States, including Plaintiff, that patients who take docetaxel (TAXOTERE®) and/or the generic non- bioequivalents of same are at a significantly increased risk of suffering from permanent disfiguring hair loss.

285. Defendants chose to withhold this information in the United States despite advising physicians, patients, and regulatory agencies in other countries, including the European Union and Canada, that docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same cause an increased risk of permanent disfiguring hair loss. Defendants instead continued to warn or advise physicians, healthcare providers, patients, and Plaintiff in the United States only with the generic, vague, and insufficient warning that "hair generally grows back" after taking docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same.

286. Users of docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same were not presented with the opportunity to make an informed choice as to whether the benefits of docetaxel (TAXOTERE®) were worth their associated risks. Defendants engaged in a pattern of deception by overstating the benefits of docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same as compared to other alternatives while simultaneously failing to warn of the risk of disfiguring permanent alopecia.

287. Although Defendants publish information in other countries to individual patients as well as regulatory agencies related to docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same and the risk of permanent alopecia, the words permanent alopecia or

permanent hair loss do not appear in any information published by Defendants in the United States.

288. As a direct result of Defendants' wrongful and deceptive acts, thousands of women were exposed to the risk of disfiguring permanent alopecia without any warning and without any additional benefit.

289. As a direct result of Defendants' failure to warn patients of the risk of disfiguring permanent alopecia in the United States, thousands of women, including Plaintiff, as well as their health care providers, were deprived of the opportunity to make an informed decision as to whether the benefits of using docetaxel (TAXOTERE®) and/or the generic non- bioequivalents of same over other comparable products was justified.

290. Defendants prayed on one of the most vulnerable groups of individuals at the most difficult time in their lives. Defendants obtained billions of dollars in increased revenues at the expense of unwary cancer victims simply hoping to survive their condition and return to a normal life.

291. Docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same were defective in their design. Docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same were designed as increased potency Taxanes. This increased potency resulted in increased toxicity, which can be directly related to increased adverse events. The most likely reason Defendants designed the increased potency Taxanes was to enable them to obtain a patent (and the concurrent market advantage) on a product that in fact was not novel but instead only more dangerous.

292. Plaintiff Evelyn Ludgood, as well as numerous other women, were the innocent victims of Defendants' greed, recklessness, and willful and wanton conduct.

**GENERIC NON-BIOEQUIVALENT DEFENDANTS' CONDUCT**

293. Defendants Hospira and Sun Pharma and McKesson Corporation and Sandoz and Accord and Pfizer and Actavis Pharma and Northstar and Eagle Pharmaceuticals are hereinafter referred to as the "Generic Non-Bioequivalent Defendants".

294. Defendant Hospira filed a new drug application ("NDA") with the Food and Drug Administration ("FDA") for a generic non-bioequivalent of docetaxel (TAXOTERE®) – Docetaxel-Anhydrous. The FDA granted Defendant Hospira's NDA and Docetaxel-Anhydrous produced by Defendant Hospira was put onto the market on March 8, 2011.

295. Defendant Sun Pharma filed an NDA with the FDA for a generic non-bioequivalent of docetaxel (TAXOTERE®) – Docefrez. The FDA granted Defendant Sun Pharma's NDA and Docefrez produced by Defendant Sun Pharma was put onto the market on May 2, 2011.

296. Defendant McKesson filed an NDA with the FDA for a generic non-bioequivalent of docetaxel (TAXOTERE®) – Docetaxel-Anhydrous. The FDA granted Defendant McKesson's NDA and Docetaxel-Anhydrous produced by Defendant McKesson was put onto the market on June 8, 2011.

297. Defendant Sandoz filed an NDA with the FDA for a generic non-bioequivalent of docetaxel (TAXOTERE®) – Docetaxel. The FDA granted Defendant Sandoz's NDA and Docetaxel produced by Defendant Sandoz was put onto the market on June 29, 2011.

298. Defendant Sandoz filed an NDA with the FDA for a generic non-bioequivalent of docetaxel (TAXOTERE®) – Docetaxel. The FDA granted Defendant Sandoz's NDA and Docetaxel produced by Defendant Sandoz was put onto the market on July 22, 2015.

299. Defendant Accord filed an NDA with the FDA for a generic non-bioequivalent of docetaxel (TAXOTERE®) – Docetaxel. The FDA granted Defendant Accord's NDA and Docetaxel produced by Defendant Accord was put onto the market on June 30, 2011.

300. Defendant Accord filed an NDA with the FDA for a generic non-bioequivalent of docetaxel (TAXOTERE®) – Docetaxel-Anhydrous. The FDA granted Defendant Accord's NDA and Docetaxel-Anhydrous produced by Defendant Accord was put onto the market on July 1, 2012.

301. Defendant Accord filed an NDA with the FDA for a generic non-bioequivalent of docetaxel (TAXOTERE®) – Docetaxel-Anhydrous. The FDA granted Defendant Accord's NDA and Docetaxel-Anhydrous produced by Defendant Accord was put onto the market on May 15, 2013.

302. Defendant Pfizer, Inc. filed an NDA with the FDA for a generic non-bioequivalent of docetaxel (TAXOTERE®) – Docetaxel-Anhydrous. The FDA granted Defendant Pfizer's NDA and Docetaxel-Anhydrous produced by Defendant Pfizer was put onto the market on June 23, 2014.

303. Defendant Actavis Pharma filed an NDA with the FDA for a generic non-bioequivalent of docetaxel (TAXOTERE®) – Docetaxel-Anhydrous. The FDA granted Defendant Actavis Pharma's NDA and Docetaxel-Anhydrous produced by Defendant Accord was put onto the market on September 1, 2014.

304. Defendant NorthStar filed an NDA with the FDA for a generic non-bioequivalent of docetaxel (TAXOTERE®) – Docetaxel-Anhydrous. The FDA granted Defendant NorthStar's NDA and Docetaxel-Anhydrous produced by Defendant NorthStar was put onto the market on January 1, 2016.

305. Defendant Eagle Pharmaceuticals filed an NDA with the FDA for a generic non-bioequivalent of docetaxel (TAXOTERE®) – Docetaxel. The FDA granted Defendant Eagle Pharmaceuticals' NDA and Docetaxel-Anhydrous produced by Defendant Eagle Pharmaceuticals was put onto the market on January 15, 2016.

## PLAINTIFF EVELYN LUDGOOD'S DIAGNOSIS, TREATMENT, AND RESULTING DISFIGURING PERMANENT ALOPECIA

306. Plaintiff was diagnosed with breast cancer in April 2015. She was subsequently prescribed chemotherapy

307. Plaintiff consulted with her medical oncologist regarding her options for chemotherapy. Neither Plaintiff nor her oncologist were aware, nor had either been informed, of any warnings from Defendants that disfiguring permanent alopecia can occur following treatment with docetaxel (TAXOTERE®) and/or a generic non-bioequivalent of same.

308. Accordingly, Plaintiff underwent cycles chemotherapy in 2015that included docetaxel (TAXOTERE®) and/or a generic non-bioequivalent of same. As a result of Defendants' wrongful conduct, Plaintiff has continued to suffer and will suffer in the future from disfiguring permanent alopecia as a result of receiving chemotherapy with docetaxel (TAXOTERE®) and/or a generic non-bioequivalent of same.

309. Plaintiff received docetaxel (TAXOTERE®) distributed by Winthrop U.S., which is a business unit of or division within Sanofi-Aventis U.S. LLC. As the holder for the reference listed drug (RLD) of brand-name TAXOTERE®, Defendant Sanofi-Aventis U.S. LLC supplied the labeling for Winthrop U.S.'s generic version of TAXOTERE®. Upon information and belief, considering their close involvement in the development, promotion, selling, and distributing docetaxel (TAXOTERE®) within the Sanofi consolidated and closely held group of companies, Defendants Sanofi S.A. and Aventis Pharma S.A. were also involved in the development of the labeling submitted for docetaxel (TAXOTERE®) in the United States. Defendants' labeling of docetaxel (TAXOTERE®) was defective because it failed to adequately warn of the risk of disfiguring permanent alopecia.

310. Plaintiff received a generic non-bioequivalent of docetaxel (TAXOTERE®) distributed by Hospira and/or Sun Pharma and/or McKesson Corporation and/or Sandoz and/or Accord and/or Pfizer and/or Actavis Pharma and/or Northstar and/or Eagle Pharmaceuticals. Upon information and belief, considering their involvement in the development, promotion, selling, and distributing of the generic non-bioequivalents of docetaxel (TAXOTERE®), the Generic Non-Bioequivalent Defendants were also involved in the development of the labeling submitted for the generic non-bioequivalents of docetaxel (TAXOTERE®) distributed by the Generic Non-Bioequivalent Defendants in the United States. The Generic Non-Bioequivalent Defendants' labeling of the generic non-bioequivalents of docetaxel (TAXOTERE®) was defective because it failed to adequately warn of the risk of disfiguring permanent alopecia.

## <u>NATURE OF THE CLAIMS</u>

311. Despite the fact that all Defendants disclosed risks associated with docetaxel (TAXOTERE®) - and/or the generic non-bioequivalents of same - and permanent alopecia to patients and regulatory agencies in other countries, all Defendants failed to either alert Plaintiff, the public, and the scientific community in the United States or perform further investigation into the safety of docetaxel (TAXOTERE®) - and/or the generic non-bioequivalents of same - regarding the side effect of disfiguring permanent alopecia. All Defendants failed to update the warnings for docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same, and they failed to disclose the results of additional studies as they learned new facts regarding the defects and risks of their product.

312. In particular, Defendants

(a) failed to disclose the results of Sanofi, S.A.'s, Aventis Pharma's and Sanofi Aventis U.S., LLC's investigation and research from 2005, including but not limited to the results of the GEICAM 9805 study, and failed to further investigate, research, study, and define fully and adequately the safety profile of docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same in response to these studies;

(b) failed to provide adequate warnings about the true safety risks associated with the use of docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same;

(c) failed to provide adequate warning regarding the pharmacokinetic and pharmacodynamic variability of docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same and their effects on the degree or severity of side effects related to permeant alopecia;

(d) failed to disclose in the "Warnings" Section that permeant alopecia is a frequent side effect associated with the use of docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same;

(e) failed to advise prescribing physicians, such as Plaintiff's physicians, to instruct patients that permanent alopecia was a side effect, much less a

frequent side effect, linked to docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same;

(f) failed to provide adequate instructions on how to intervene and/or reduced the risk of permanent alopecia related to the use of docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same;

(g) failed to provide adequate warnings and information related to the increased risks of permeant alopecia in certain genome groups;

(h) failed to provide adequate warnings regarding the increased risk of permeant alopecia with the use of docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same as compared to other products designed to treat the same conditions as docetaxel (TAXOTERE®); and

(i) failed to include a **"BOXED WARNING"** related to permanent or persistent alopecia.

313. During the years since first marketing docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same in the U.S., Defendants modified the U.S. labeling and prescribing information for docetaxel (TAXOTERE®) on multiple occasions. Defendants failed, however, to include any warning whatsoever related to permanent alopecia despite Defendants' awareness of the frequency and severity of this side effect.

314. Before applying for and obtaining approval of docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same, Defendants knew or should have known that consumption of docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same, was associated with and/or would cause disfiguring side effects including disfiguring permanent alopecia.

315. Despite knowing that docetaxel (TAXOTERE®)and/or the generic non-bioequivalents of same were likely to result in increased rates of alopecia and disfiguring

permanent alopecia, Defendants produced, marketed, and distributed docetaxel (TAXOTERE®) in the United States.

316. All Defendants failed to adequately conduct complete and proper testing of docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same prior to filing their New Drug Application for docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same.

317. From the date all Defendants received FDA approval to market docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same, all Defendants made, distributed, marketed, and sold docetaxel (TAXOTERE®) and/or the generic non-biononvalents of same without adequate warning to Plaintiff or Plaintiff's prescribing physicians that docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same were associated with disfiguring permanent alopecia.

318. All Defendants ignored the association between the use of docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of the same and the risk of disfiguring permanent alopecia.

319. All Defendants failed to disclose information that they possessed regarding their failure to adequately test and study docetaxel (TAXOTERE®) - and/or the generic non-bioequivalents of same - related to the side effect of disfiguring permanent alopecia. Plaintiff and her healthcare providers could not have discovered all Defendants' false representations and failures to disclose information through the exercise of reasonable diligence.

320. As a result of the foregoing acts and omissions, Defendants caused Plaintiff to suffer serious and dangerous side effects, severe and personal injuries that are permanent and

lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; psychological counseling and therapy expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

## ESTOPPEL FROM PLEADING STATUTES OF LIMITATIONS

321. Plaintiff incorporates by reference the averments of the preceding paragraphs of the Complaint as if fully set forth at length herein.

322. Plaintiff is within the applicable statutes of limitations for the claims presented herein because Plaintiff did not discover the defects and unreasonably dangerous condition of Defendants' docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same and the risks associated with their use in the form of disfiguring permanent alopecia, and could not reasonably have discovered the defects and unreasonably dangerous condition of Defendants' docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same and the risks associated with their use, due to the Defendants' failure to warn, suppression of important information about the risks of the drug, including but not limited to the true risk benefit profile, and the risk of disfiguring permanent alopecia and damages known by Defendants to result from the use of docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same, and other acts and omissions.

323. In addition, Defendants are estopped from relying on any statutes of limitations by virtue of their acts of fraudulent concealment, affirmative misrepresentations and omissions, which include Defendants' intentional concealment from Plaintiff, Plaintiff's prescribing health care professionals and the general consuming public that Defendants' docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same were defective, unreasonably dangerous and carried with them the serious risk of developing the injuries Plaintiff has suffered while aggressively and continually marketing and promoting docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same as safe and effective. This includes, but is not limited to, Defendants' failure to disclose and warn of the risk of disfiguring permanent alopecia and injuries known by Defendants to result from use of docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same, for example, and not by way of limitation, internal concern about reports and studies finding an increased risk of disfiguring permanent alopecia; suppression of information about these risks and injuries from physicians and patients, including Plaintiff; use of sales and marketing documents and information that contained information contrary to the internally held knowledge regarding the aforesaid risks and injuries; and overstatement of the efficacy and safety of docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same.

324. Defendants had a duty to disclose that docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same were defective, unreasonably dangerous and that the use of Defendants' docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same carried with them the serious risk of developing disfiguring permanent alopecia as the Plaintiff has suffered. Defendants breached that duty.

325. Plaintiff, Plaintiff's prescribing health care professionals and the general consuming public, had no knowledge of, and no reasonable way of discovering, the defects found in Defendants' docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same or the true risks associated with her use at the time she purchased and used Defendants' docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same.

326. Defendants did not notify, inform, or disclose to Plaintiff, Plaintiff's prescribing health care professionals or the general consuming public that Defendants' docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same were defective and that their use carried with them the serious risk of developing the injuries Plaintiff has suffered and complained of herein.

327. Because Defendants failed in their duty to notify Plaintiff, Plaintiff's prescribing health care professionals and the general consuming public that their docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same were defective and, further, actively attempted to conceal this fact, Defendants should be estopped from asserting defenses based on statutes of limitation.

328. Accordingly, Plaintiff files this lawsuit within the applicable statutes of limitations, Plaintiff could not by exercise of reasonable diligence have discovered any wrongdoing, nor could have discovered the causes of her injuries at an earlier time, and when Plaintiff's injuries were discovered, their causes were not immediately known or knowable based on the lack of necessary information, which was suppressed by the Defendants. Further, the relationship of Plaintiff's injuries to docetaxel (TAXOTERE®) - and/or the generic non-bioequivalents of same - exposure through the Defendants' drugs was inherently difficult to

discover, in part due to the Defendants' knowing suppression of important safety information. Consequently, the discovery rule should be applied to toll the running of the statutes of limitations until Plaintiff discovered, or by the exercise of reasonable diligence should have discovered, that Plaintiff may have a basis for an actionable claim.

## FIRST CLAIM FOR RELIEF
## (Product Liability for Negligence – Against All Defendants)

329. Plaintiff repeats, reiterates, and re-alleges Paragraphs 1 through 328 of this Complaint inclusive, with the same force and effect as if fully set forth herein.

330. Defendants had a duty to exercise reasonable care in the designing, researching, manufacturing, marketing, supplying, promoting, packaging, sale, and/or distribution of docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same into the stream of commerce, including a duty to assure that the product would not cause users to suffer unreasonable, dangerous side effects.

331. Defendants failed to exercise reasonable care in the designing, researching, manufacturing, marketing, supplying, promoting, packaging, sale, testing, quality assurance, quality control, and/or distribution of docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same into interstate commerce in that Defendants knew or should have known that using docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same created a high risk of unreasonable, disfiguring side effects, including personal injuries that are permanent and lasting in nature such as disfiguring permanent alopecia, mental anguish, and diminished enjoyment of life, economic loss, and loss of economic opportunity.

332. The negligence of Defendants, their agents, servants, and/or employees, included but was not limited to the following acts and/or omissions:

(a) Manufacturing, producing, promoting, formulating, creating, and/or designing docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same without thoroughly testing them;

(b) Manufacturing, producing, promoting, formulating, creating, and/or designing docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same without adequately testing them;

(c) Not conducting sufficient testing programs to determine whether or not docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same were safe for use in that Defendants knew or should have known that docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same were unsafe and unfit for use by reason of the dangers to their users;

(d) Selling docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same without disclosing their dangers and risks and/or making proper and sufficient tests to determine the dangers and risks to their users;

(e) Negligently failing to adequately and correctly warn Plaintiff, Plaintiffs' physicians, the public, and the medical and healthcare profession of the dangers of docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same;

(f) Failing to provide adequate instructions regarding safety precautions to be observed by users, handlers, and persons who would reasonably and foreseeably come into contact with, and more particularly, use, docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same;

(g) Failing to test docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same and/or failing to adequately, sufficiently, and properly test docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same;

(h) Negligently advertising and recommending the use of docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same without sufficient knowledge as to their dangerous propensities;

(i) Negligently representing that docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same were safe for use for their intended purpose, when, in fact, they were unsafe;

(j) Negligently and falsely representing that docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same were superior to other commercially available products designed to treat the same forms of cancer docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same were designed to treat;

(k) Negligently designing docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same in a manner that was dangerous to their users;

(l) Negligently manufacturing docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same in a manner that was dangerous to their users;

(m) Negligently producing docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same in a manner that was dangerous to their users;

(n) Negligently assembling docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same in a manner that was dangerous to their users;

(o) Concealing information from Plaintiff, Plaintiff's physicians, the public, and the FDA in knowing that docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same were unsafe, dangerous, and/or non-conforming with FDA regulations; and

(p) Improperly concealing from and/or misrepresenting information to Plaintiff, Plaintiff's physicians, other healthcare professionals, and/or the FDA concerning the severity of risks and dangers of docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same compared to other forms of treatment for breast cancer.

333. Defendants underreported, underestimated, and downplayed the serious dangers and risk associated with docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same.

334. Defendants negligently conveyed that the safety risks and/or dangers of docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same were comparable with other

forms of treatment for the same conditions for which docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same were prescribed to treat.

335. Defendants were negligent in the designing, researching, supplying, manufacturing, promoting, packaging, distributing, testing, advertising, warning, marketing, and selling of docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same in that they:

(a) Failed to use due care in designing and manufacturing docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same so as to avoid the aforementioned risks to individuals when docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same were used for the treatment of breast cancer;

(b) Failed to accompany their product with proper and/or accurate warnings regarding all possible adverse side effects associated with the use of docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same;

(c) Failed to accompany their product with proper warnings regarding all possible adverse side effects concerning the risks and dangers associated with docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same;

(d) Failed to accompany their product with accurate warnings regarding the risks of all possible adverse side effects concerning docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same;

(e) Failed to warn Plaintiff and Plaintiff's physicians of the severity and duration of such adverse effects, as the warnings given did not accurately reflect the symptoms, or severity, of the side effects;

(f) Failed to conduct adequate testing, including pre-clinical and clinical testing and post-marketing surveillance, to determine the safety, dangers, and risks associated with docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same;

(g) Failed to warn Plaintiff and Plaintiff's physicians before actively encouraging the sale of docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same, either directly or indirectly, orally or in writing, about the need for more comprehensive and regular medical monitoring than usual to ensure early discovery of potentially serious side effects; and

(h) Were otherwise careless and/or negligent.

336. Despite the fact that Defendants knew or should have known that docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same caused unreasonably dangerous side effects, Defendants continued and continue to market, manufacture, distribute, and/or sell docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same to consumers, including Plaintiff.

337. Defendants negligently and improperly failed to perform sufficient tests, forcing Plaintiff, Plaintiff's physicians, and/or hospitals to rely on safety information that did not accurately represent the risks and benefits associated with the use of docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same as compared to other products already commercially available to treat the same types of cancer docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same were designed to treat.

338. Defendants knew or should have known that consumers such as Plaintiff would use their product and would foreseeably suffer injury as a result of Defendants' failure to exercise reasonable care, as set forth above.

339. Defendants' negligence was the proximate cause of Plaintiff's injuries, harms, damages, and losses.

340. As a direct and proximate result of the use of docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same, Plaintiff experienced disfiguring permanent alopecia.

341. As a result of the foregoing acts and omissions, Defendants caused Plaintiff to suffer serious and dangerous side effects, severe and personal injuries that are permanent and

lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; psychological counseling and therapy expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

**SECOND CLAIM FOR RELIEF**
**(Strict Products Liability – Design and Manufacturing Defects – Against All Defendants)**

342. Plaintiff repeats, reiterates, and re-alleges Paragraphs 1 through 341 of this Complaint inclusive, with the same force and effect as if fully set forth herein.

343. At all times relevant, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, distributed, and/or have recently acquired the entities that have designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same as hereinabove described that was used by Plaintiff.

344. Docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same were expected to and did reach the usual consumers, handlers, and persons coming into contact with said product without substantial change in the condition in which they were produced, manufactured, sold, distributed, and marketed by Defendants.

345. At those times, docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same were in an unsafe, defective, and inherently dangerous condition, which was dangerous to users, and in particular, Plaintiff.

346. The docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants were defective in design or formulation in that, when they left the hands of the manufacturer and/or suppliers, the foreseeable risks exceeded the benefits associated with the design or formulation of docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same.

347. The docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants were defective in design and/or formulation, in that, when they left the hands of Defendants, manufacturers, and/or suppliers, they were unreasonably dangerous, and they were more dangerous and posed risk greater than an ordinary consumer would expect.

348. At all times relevant, docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same were in a defective condition and unsafe, and Defendants knew or had reason to know that docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same were defective and unsafe, especially when used in the form and manner as provided by Defendants.

349. Defendants knew, or should have known, that at all times relevant, docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same were in a defective condition and were and are inherently dangerous and unsafe.

350. At the time of Plaintiff's use of docetaxel (TAXOTERE®) , the docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same were being used for the purposes and in a manner normally intended, namely for the treatment of breast cancer.

351. Defendants with this knowledge voluntarily designed docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same in a dangerous condition for use by the public, and in particular, Plaintiff.

352. Defendants had a duty to create products that were not unreasonably dangerous for their normal, intended use.

353. In creating docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same, Defendants created products that were and are unreasonably dangerous for their normal, intended use, and a safer alternative design existed.

354. The docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants were manufactured defectively and were unreasonably dangerous to their intended users.

355. The docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants reached the intended users in the same defective and unreasonably dangerous condition in which Defendants' docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same were manufactured.

356. Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed defective products that created an unreasonable risk to the health

of consumers and to Plaintiff in particular; and Defendants are therefore strictly liable for the injuries sustained by Plaintiff.

357. Plaintiff and Plaintiff's physicians could not, by the exercise of reasonable care, have discovered docetaxel (TAXOTERE®)'s and/or the generic non-bioequivalents of same's defects mentioned herein and perceived their danger.

358. The docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants were defective due to inadequate warnings or instructions, as Defendants knew or should have known that the product created a risk of serious and dangerous side effects including disfigurement as well as other severe and personal injuries that are permanent and lasting in nature, and Defendants failed to adequately warn of these risks.

359. The docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants were defective due to inadequate warnings and/or inadequate testing.

360. The docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants were defective due to inadequate post-marketing surveillance and/or warnings because, after Defendants knew or should have known of the risks of serious side effects, including disfigurement, as well as other severe and permanent health consequences from docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same, they failed to provide adequate warnings to users or consumers of the product, and they continued to improperly

advertise, market, and/or promote docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same.

361. By reason of the foregoing, Defendants are strictly liable to Plaintiff for the manufacturing, marketing, promoting, distribution, and selling of docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same, defective products.

362. Defendants' defective design, manufacturing defect, and inadequate warnings of docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same were acts that amount to willful, wanton, and/or reckless conduct by Defendants.

363. The defects in Defendants' drug docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same were a producing cause and a substantial factor in causing Plaintiff's injuries.

364. As a result of the foregoing acts and omissions, Defendants caused Plaintiff to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; psychological counseling and therapy expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

## THIRD CLAIM FOR RELIEF
**(Strict Products Liability – Failure to Warn – Against All Defendants)**

365. Plaintiff repeats, reiterates, and re-alleges Paragraphs 1 through 364 of this Complaint inclusive, with the same force and effect as if fully set forth herein.

366. The docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same designed, formulated, produced, manufactured, sold, marketed, distributed, supplied and/or placed into the stream of commerce by Defendants were defective in that they failed to include adequate warnings regarding all adverse side effects associated with the use of docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same. The warnings given by Defendants did not sufficiently and/or accurately reflect the symptoms, type, scope, severity, or duration of the side effects and, in particular, the risks of disfiguring permanent alopecia. As the holder for the RLD of brand-name TAXOTERE®, the Sanofi Defendants supplied the labeling for Winthrop U.S.'s generic version of TAXOTERE®. This labeling was defective because it failed to adequately warn of the risk of disfiguring permanent alopecia.

367. Defendants failed to provide adequate warnings to physicians and users, including Plaintiff's physicians and Plaintiff, of the increased risk of disfiguring permanent alopecia associated with docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same, and Defendants aggressively and fraudulently promoted the product to physicians.

368. As a direct and proximate result of Defendants' failure to warn of the potentially severe adverse effects of docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same, Plaintiff suffered disfiguring permanent alopecia and other conditions.

369. As a result of the foregoing acts and omissions, Defendants caused Plaintiff to suffer serious and dangerous side effects, severe and personal injuries that are permanent and

lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; psychological counseling and therapy expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

## FOURTH CLAIM FOR RELIEF
**(Breach of Express Warranty – Against All Defendants)**

370. Plaintiff repeats, reiterates, and re-alleges Paragraphs 1 through 369 of this 0Complaint inclusive, with the same force and effect as if fully set forth herein.

371. Defendants expressly warranted that Docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same were safe and well accepted by users.

372. Docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same do not conform to these express representations, because Docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same are not safe and have numerous serious side effects, many of which were not accurately warned about by Defendants.

373. As a direct and proximate result of the breach of these warranties, Plaintiff suffered and will continue to suffer severe and permanent personal injuries, disfigurement, harms, and losses.

374. Plaintiff relied on Defendants' express warranties.

375. Members of the medical community, including physicians and other healthcare professionals, relied upon the representations and warranties of Defendants for use of Docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same in recommending, prescribing, and/or dispensing Docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same. Defendants breached the aforesaid express warranties, as their drugs Docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same were and are defective.

376. Defendants expressly represented to Plaintiff, Plaintiff's physicians, and/or healthcare providers that docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same were safe and fit for use for the purposes intended, that they were of merchantable quality, that they did not produce any dangerous side effects in excess of those risks associated with other forms of treatment for cancer, that the side effects they did produce were accurately reflected in the warnings, and that they were adequately tested and fit for their intended use.

377. Defendants knew or should have known that, in fact, their representations and warranties were false, misleading, and untrue in that docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same were not safe and fit for the use intended, and, in fact, docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same produced serious injuries to the users that were not accurately identified and represented by Defendants.

378. As a result of the foregoing acts and omissions, Defendants caused Plaintiff to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; psychological counseling and therapy expenses; past and future loss of earnings; past and future loss and impairment of earning capacity;

permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

## FIFTH CLAIM FOR RELIEF
**(Breach of Implied Warranty – Against All Defendants)**

379. Plaintiff repeats, reiterates, re-alleges Paragraphs 1 through 378 of this Complaint inclusive, with the same force and effect as if fully set forth herein.

380. At all times relevant, Defendants manufactured, compounded, portrayed, distributed, recommended, merchandized, advertised, promoted, and sold docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same and/or have recently acquired the entities that have manufactured, compounded, portrayed, distributed, recommended, merchandized, advertised, promoted, and sold docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same for the treatment of various forms of cancer.

381. At the time Defendants marketed, sold, and distributed docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same for use by Plaintiff, Defendants knew of the use for which docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same were intended and impliedly warranted the product to be of merchantable quality and safe and fit for such use.

382. Defendants impliedly represented and warranted to the users of docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same and their physicians, and/or healthcare providers that docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of

same were safe and of merchantable quality and fit for the ordinary purpose for which they were to be used.

383. Defendants' aforementioned representations and warranties were false, misleading, and inaccurate in that docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same were unsafe, unreasonably dangerous, improper, not of merchantable quality, and defective.

384. Plaintiff, Plaintiff's physicians, members of the medical community, and healthcare professionals relied on this implied warranty of merchantability of fitness for a particular use and purpose.

385. Plaintiff, Plaintiff's physicians, and Plaintiff's healthcare professionals reasonably relied upon the skill and judgment of Defendants as to whether docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same were of merchantable quality and safe and fit for their intended use.

386. Docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same were placed into the stream of commerce by Defendants in a defective, unsafe, and inherently dangerous condition.

387. Docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same were expected to and did reach users, handlers, and persons coming into contact with docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same without substantial change in the condition in which they were sold.

388. Defendants breached the aforementioned implied warranties, as their drugs docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same were not fit for their intended purposes and uses.

389. As a result of the foregoing acts and omissions, Defendants caused Plaintiff to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; psychological counseling and therapy expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

## SIXTH CLAIM FOR RELIEF
**(Fraudulent Misrepresentation – Against All Defendants)**

390. Plaintiff repeats, reiterates, and re-alleges Paragraphs 1 through 389 of this Complaint inclusive, with the same force and effect as if fully set forth herein.

391. Defendants falsely and fraudulently represented to Plaintiff, Plaintiff's physicians, the medical and healthcare community, and the public in general that docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same had been tested and were found to be safe and effective for the treatment of certain forms of cancer.

392. When warning of safety and risks of docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same, Defendants fraudulently represented to Plaintiff, Plaintiff's

physicians, the medical and healthcare community, and the public in general that docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same had been tested and were found to be safe and/or effective for their indicated use.

393. Defendants concealed their knowledge of docetaxel's (TAXOTERE®'s) and/or the generic non-bioequivalents of same's defects from Plaintiff, Plaintiff's physicians, and the public in general and/or the medical community specifically.

394. Defendants concealed their knowledge of the defects in their products from Plaintiff, Plaintiff's physicians, hospitals, pharmacists, and the public in general.

395. Defendants made these false representations with the intent of defrauding and deceiving Plaintiff, Plaintiff's physicians, the public in general, and the medical and healthcare community in particular, and were made with the intent of inducing Plaintiff, Plaintiff's physicians, the public in general, and the medical community in particular, to recommend, dispense, and/or purchase docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same for use in the treatments of various forms of cancer, including but not limited to breast cancer, all of which evidenced a callous, reckless, willful, wanton, and depraved indifference to the health, safety, and welfare of Plaintiff.

396. Defendants made these false representations with the intent of defrauding and deceiving Plaintiff, Plaintiff's physicians, as well as the public in general, and the medical and healthcare community in particular, and were made with the intent of inducing the public in general, and the medical community in particular, to recommend, dispense, and/or purchase docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same for use in the treatments of various forms of cancer, including but not limited to breast cancer.

397. When Defendants made these representations, Defendants knew those representations were false, and Defendants willfully, wantonly, and recklessly disregarded whether the representations were true.

398. At the time Defendants made the aforesaid representations, and, at the time Plaintiff used docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same, Plaintiff and Plaintiff's physicians were unaware of the falsity of Defendants' representations, and Plaintiff and Plaintiff's physicians reasonably believed them to be true.

399. In reliance upon Defendants' representations, Plaintiff and Plaintiff's physicians were induced to and did use and prescribe docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same, which caused Plaintiff to sustain severe, permanent, and disfiguring personal injuries.

400. Defendants knew and were aware or should have been aware that docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same had not been sufficiently tested, were defective in nature, and/or that they lacked adequate and/or sufficient warnings.

401. Defendants knew or should have known that docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same had a potential to, could, and would cause severe and grievous injury to the users of docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same and that docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same were inherently dangerous in a manner that exceeded any purported, inaccurate, and/or down-played warnings.

402. Defendants brought docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same to the market and acted fraudulently, wantonly, and maliciously to the detriment of Plaintiff.

403. As a result of the foregoing acts and omissions, Defendants caused Plaintiff to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; psychological counseling and therapy expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

## **SEVENTH CLAIM FOR RELIEF**
**(Fraudulent Concealment – Against All Defendants)**

404. Plaintiff repeats, reiterates, and re-alleges Paragraphs 1 through 403 of this Complaint inclusive, with the same force and effect as if fully set forth herein.

405. At all times during the course of dealing between Defendants and Plaintiff and Plaintiff's healthcare providers, Defendants misrepresented the design characteristics and safety of docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same for their intended use.

406. Defendants knew or were reckless in not knowing that their representations were false.

407. In representations made to Plaintiff and Plaintiff's healthcare providers, Defendants fraudulently concealed and intentionally omitted the following material information:

(a) that docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same were not as safe as other forms of treatment for which docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same were marketed and sold to cancer patients;

(b) that the risks of adverse events with docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same were higher than those with other forms of treatment for which docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same were marketed and sold to cancer patients;

(c) that the risks of adverse events with docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same were not adequately tested and/or known by Defendants;

(d) that Defendants were aware of dangers in docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same, in addition to and above and beyond those associated with other forms of treatment for cancer patients;

(e) that docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same were defective in that they caused dangerous side effects as well as other severe and permanent health consequences in a much more and significant rate than other forms of treatment for cancer patients;

(f) that docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same were manufactured negligently;

(g) that docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same were manufactured defectively;

(h) that docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same were manufactured improperly;

(i) that docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same were designed negligently;

(j) that Docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same were designed defectively; and

(k) that docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same were designed improperly.

408. Defendants had a duty to disclose to Plaintiff, Plaintiff's physicians, hospitals, and/or healthcare providers the defective nature of docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same, including but not limited to the heightened risks of disfiguring permanent alopecia.

409. Defendants had sole access to material facts concerning the defective nature of docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same and their propensity to cause serious and dangerous side effects, and therefore cause damage to persons who used docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same, including Plaintiff, in particular.

410. Defendants' concealment and omissions of material facts concerning the safety of docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same were made purposefully, willfully, wantonly, and/or recklessly to mislead Plaintiff, Plaintiff's physicians, hospitals, and healthcare providers into reliance on the continued use of Docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same and to cause them to purchase, prescribe, and/or dispense docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same and/or use docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same.

411. Defendants knew that Plaintiff, Plaintiff's physicians, hospitals, and/or healthcare providers had no way to determine the truth behind Defendants' concealment and omissions,

including the material omissions of facts surrounding docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same set forth herein.

412. Plaintiff, Plaintiff's physicians, healthcare providers, and/or hospitals reasonably relied on information revealed by Defendants that negligently, fraudulently, and/or purposefully did not include facts that were concealed and/or omitted by Defendants.

413. As a result of the foregoing acts and omissions, Defendants caused Plaintiff to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; psychological counseling and therapy expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

## EIGHTH CLAIM FOR RELIEF
**(Negligence Misrepresentation – Against All Defendants)**

414. Plaintiff repeats, reiterates, and re-alleges Paragraphs 1 through 413 of this Complaint inclusive, with the same force and effect as if fully set forth herein.

415. Defendants had a duty to represent to Plaintiff, Plaintiff's physicians, the medical and healthcare community, and the public in general that docetaxel (TAXOTERE®) and/or the

generic non-bioequivalents of same had been tested and found to be safe and effective for the treatment of various forms of cancer.

416. When warning of safety and risks of docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same, Defendants negligently represented to Plaintiff, Plaintiff's physicians, the medical and healthcare community, and the public in general that docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same had been tested and were found to be safe and/or effective for their indicated use.

417. Defendants concealed their knowledge of docetaxel's (TAXOTERE®'s) and/or the generic non-bioequivalents of same's defects from Plaintiff, Plaintiff's physicians, and the public in general and/or the medical community specifically.

418. Defendants concealed their knowledge of the defects in their products from Plaintiff, Plaintiff's physicians, hospitals, pharmacists, and the public in general.

419. Defendants misrepresented the novel nature of their product in order to gain a market advantage resulting in billions of dollars in revenues at the expense of vulnerable cancer victims such as Plaintiff.

420. Defendants made these misrepresentations with the intent of defrauding and deceiving Plaintiff, Plaintiff's physicians, the public in general, and the medical and healthcare community in particular, and were made with the intent of inducing Plaintiff, Plaintiff's physicians, the public in general, and the medical community in particular, to recommend, dispense, and/or purchase docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same for use in the treatments of various forms of cancer, including but not limited to breast cancer.

421. Defendants failed to exercise ordinary and reasonable care in their representations of docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same while involved in their manufacture, sale, testing, quality assurance, quality control, and/or distribution into interstate commerce, and Defendants negligently misrepresented docetaxel's (TAXOTERE®'s) and/or the generic non-bioequivalents of same's high risk of unreasonable, dangerous side effects.

422. Defendants breached their duty in misrepresenting docetaxel's (TAXOTERE®'s) and/or the generic non-bioequivalents of same's serious side effects to Plaintiff, Plaintiff's physicians, the medical and healthcare community, the FDA, and the public in general.

423. Plaintiff and Plaintiff's physicians reasonably relied on Defendants to fulfill their obligations to disclose all facts within their knowledge regarding the serious side effects of docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same.

424. As a result of the foregoing acts and omissions, Defendants caused Plaintiff to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; psychological counseling and therapy expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

## **NINTH CLAIM FOR RELIEF**

**(Strict Product Liability for Misrepresentation – Against All Defendants)**

425. Plaintiff repeats, reiterates, and re-alleges Paragraphs 1 through 424 of this Complaint inclusive, with the same force and effect as if fully set forth herein.

426. Defendants sold the docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same that Plaintiff's physician prescribed for Plaintiff and that Plaintiff used.

427. Defendants were engaged in the business of selling the docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same for resale, use, or consumption.

428. Defendants misrepresented facts as set forth herein concerning the character or quality of the docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same that would be material to potential prescribers and purchasers or users of the product.

429. Defendants' misrepresentations were made to potential prescribers and/or purchasers or users as members of the public at large.

430. As a purchaser or user, Plaintiff reasonably relied on the misrepresentation.

431. Plaintiff was a person who would reasonably be expected to use, consume, or be affected by the docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same.

432. As a result of the foregoing acts and omissions, Defendants caused Plaintiff to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; psychological counseling and therapy expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental

pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

## TENTH CLAIM FOR RELIEF
**(Fraud and Deceit – Against All Defendants)**

433. Plaintiff repeats, reiterates, and re-alleges Paragraphs 1 through 432 of this Complaint inclusive, with the same force and effect as if fully set forth herein.

434. Defendants committed fraud by omission in applying for and gaining patent protection for docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same resulting in increased sales and market penetration. This increased market penetration was the proximal cause of Plaintiff's exposure to the side effects of docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same.

435. Defendants fraudulently claimed superior efficacy over other products designed to treat the same conditions for which docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same were designed to treat. These fraudulent representations were the proximal cause of Plaintiff's exposure to the side effects of docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same.

436. As a result of Defendants' research and testing, or lack thereof, Defendants intentionally distributed false information, including but not limited to assuring Plaintiff, Plaintiff's physicians, hospitals, healthcare professionals, and/or the public that docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same were safe and effective for use in the treatment of various forms of cancer, including breast cancer.

437. As a result of Defendants' research and testing, or lack thereof, Defendants intentionally omitted certain results of testing and or research to Plaintiff, Plaintiff's physicians, healthcare professionals, and/or the public.

438. Defendants had a duty when disseminating information to Plaintiff, Plaintiff's physicians, and the public to disseminate truthful information.

439. Defendants had a duty when disseminating information to Plaintiff, Plaintiff's physicians, and the public not to deceive Plaintiff, Plaintiff's physicians, and/or the public.

440. The information Defendants distributed to Plaintiff, Plaintiff's physicians, and the public, including but not limited to reports, press releases, advertising campaigns, and other forms of media contained material representations of fact and/or omissions.

441. The information Defendants distributed to Plaintiff, Plaintiff's physicians, and the public intentionally included false representations that Defendants' drug docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same were safe and effective for the treatment of various forms of cancer, including breast cancer.

442. The information Defendants distributed to Plaintiff, Plaintiff's physicians, and the public intentionally included false representations that Defendants' drug docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same carried the same risks, hazards, and/or dangers as other forms of treatment for the same conditions for which docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same were designed to treat.

443. The information Defendants distributed to Plaintiff, Plaintiff's physicians, and the public intentionally included false representations that docetaxel (TAXOTERE®) and/or the

generic non-bioequivalents of same were not injurious to the health and/or safety of their intended users.

444. The information Defendants distributed to Plaintiff, Plaintiff's physicians, and the public intentionally included false representations that docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same were no more injurious to the health and/or safety of their intended users as other forms of cancer treatments for which docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same were designed to treat.

445. These representations by Defendants were all false and misleading.

446. Defendants intentionally suppressed, ignored, and disregarded test results not favorable to Defendants and that demonstrated that docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same were not safe as a means of treatment for certain types of cancer for which docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same were designed to treat.

447. Defendants intentionally made material misrepresentations to Plaintiff, Plaintiff's physicians, and the public, including the medical profession, regarding the safety of docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same, specifically but not limited to docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same not having dangerous and serious health and/or safety concerns.

448. Defendants intentionally made material misrepresentations to Plaintiff, Plaintiff's physicians, and the public in general, including the medical profession, regarding the safety of docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same, specifically but not limited to docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same being as

safe as other products designed to treat the same conditions docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same were designed to treat.

449. It was Defendants' intent and purpose in making these false representations to deceive and defraud Plaintiff, Plaintiff's physicians, and/or the public and to gain the confidence of Plaintiff, Plaintiff's physicians, the public, and/or healthcare professionals to falsely ensure the quality and fitness for use of docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same and induce Plaintiff, Plaintiff's physicians, and the public, including the medical profession, to purchase, request, dispense, prescribe, recommend, and/or continue to use docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same.

450. Defendants made the aforementioned false claims and false representations with the intent of convincing Plaintiff, Plaintiff's physicians, the public, and/or healthcare professionals that docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same were fit and safe for use as treatment for certain types of cancer, including breast cancer.

451. Defendants made the aforementioned false claims and false representations with the intent of convincing Plaintiff, Plaintiff's physicians, the public, and/or healthcare professionals that docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same were fit and safe for use as treatment of certain forms of cancer and did not pose risks, dangers, or hazards above and beyond those identified and/or associated with other forms of treatment for which docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same were designed to treat.

452. Defendants made false claims and false representations in their documents submitted to Plaintiff, Plaintiff's physicians, the public and healthcare professionals that

docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same did not present risks related to disfigurement secondary to permanent alopecia.

453. Defendants made false claims and false representations in their documents submitted to Plaintiff, Plaintiff's physicians, the public, and healthcare professionals that docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same did not present health and/or safety risks greater than other forms of treatment for the same conditions docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same were designed to treat.

454. Defendants made these and other representations with a pretense of actual knowledge when Defendants had no knowledge of the truth or falsity of these representations, and Defendants made these representations recklessly and without regard to the actual facts.

455. Defendants made these and other representations with the intention of deceiving and defrauding Plaintiff and Plaintiff's respective healthcare professionals.

456. Defendants made these and other representations in order to induce Plaintiff and Plaintiff's respective healthcare professionals to rely upon the misrepresentations.

457. Defendants' false misrepresentations caused Plaintiff and/or Plaintiff's healthcare professionals to purchase, use, rely on, request, dispense, recommend, and/or prescribe docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same.

458. Defendants recklessly and intentionally falsely represented the dangerous and serious health and/or safety concerns of docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same to the public at large, and Plaintiff and Plaintiff's physicians in particular, for the purpose of influencing the marketing of a product Defendants knew were dangerous and defective and/or not as safe as other alternatives, including other forms of treatment for cancer.

459. Defendants willfully and intentionally failed to disclose, concealed, and/or suppressed the material facts regarding the dangerous and serious health and/or safety concerns related to docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same.

460. Defendants willfully and intentionally failed to disclose the truth and material facts related to docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same and made false representations with the purpose and design of deceiving and lulling Plaintiff and Plaintiff's respective healthcare professionals into a sense of security so that Plaintiff and Plaintiff's healthcare professionals would rely on Defendants' representations to purchase, use, dispense, prescribe, and/or recommend docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same.

461. Defendants, through their public relations efforts, which included but were not limited to public statements and press releases, knew or should have known that the public, including Plaintiff and Plaintiff's respective healthcare professionals, would rely upon the information being disseminated.

462. Plaintiff and/or Plaintiff's respective healthcare professionals did in fact rely on and believe Defendants' false representations to be true at the time they were made, and they relied upon Defendants' false representations and superior knowledge of how docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same would treat certain forms of cancer for which docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same were designed to treat.

463. At the time Defendants' false representations were made, Plaintiff and/or Plaintiff's respective healthcare providers did not know the truth and were not with reasonable

diligence able to discover the truth with regard to the dangerous and serious health and/or safety concerns of docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same.

464. Plaintiff and her healthcare providers did not discover the true facts with respect to Defendants' false representations and the dangerous and serious health and/or safety concerns of docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same, and Plaintiff and her healthcare providers with reasonable diligence could not have discovered the true facts.

465. Had Plaintiff and her healthcare providers known the true facts with respect to the dangerous and serious health and/or safety concerns of docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same, Plaintiff would not have purchased, used, and/or relied on Defendants' drug docetaxel (TAXOTERE®) and/or the generic non-bioequivalents of same.

466. Defendants' aforementioned conduct constitutes fraud and deceit, and it was committed and/or perpetrated willfully, wantonly, and/or purposefully on Plaintiff.

467. As a result of the foregoing acts and omissions, Defendants caused Plaintiff to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; psychological counseling and therapy expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

468. Plaintiff is entitled to treble damages, exemplary damages, attorneys' fees, and costs.

## ELEVENTH CLAIM FOR RELIEF

**(Extreme and Outrageous Conduct / Intentional Infliction of Emotional Distress – Against All Defendants)**

469. Plaintiff repeats, reiterates, and re-alleges Paragraphs 1 through 468 of this Complaint inclusive, with the same force and effect as if fully set forth herein.

470. Defendants' conduct, as set forth above, was extreme and outrageous.

471. Defendants' actions were done recklessly or with the intent of causing Plaintiff severe emotional distress; and

472. Defendants' conduct caused Plaintiff severe emotional distress.

473. As a result of the foregoing acts and omissions, Defendants caused Plaintiff to suffer serious and dangerous side effects, severe and personal injuries that are permanent and lasting in nature, and economic and non-economic damages, harms, and losses, including but not limited to: past and future medical expenses; psychological counseling and therapy expenses; past and future loss of earnings; past and future loss and impairment of earning capacity; permanent disfigurement including permanent alopecia; mental anguish; severe and debilitating emotional distress; increased risk of future harm; past, present, and future physical and mental pain, suffering, and discomfort; and past, present, and future loss and impairment of the quality and enjoyment of life.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Evelyn Ludgood demands judgment against Defendants Sanofi S.A.; Aventis Pharma S.A.; and Sanofi-Aventis U.S. LLC, separately; and doing business as Winthrop, U.S. Hospira Worldwide, Inc.; and Sun Pharma Global Inc.; and McKesson Corporation d/b/a McKesson Packaging; and Sandoz Inc.; and Accord Healthcare Inc..; and Pfizer, Inc.; and Actavis Pharma, Inc.; and Northstar Rx LLC; and Eagle Pharmaceuticals, Inc., in an amount to be determined at trial by the trier of fact for her injuries, harms, damages, and losses as set forth above, special damages, treble damages, costs, expert witness fees, attorneys' fees, filing fees, pre- and post-judgment interest, all other injuries and damages as shall be proven at trial, and such other further relief as the Court may deem appropriate, just, and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted this 1st day of March 2017

_

/s/ J. Christopher Elliott
***Darin L. Schanker***
***J. Kyle Bachus***
***J. Christopher Elliott***
Bachus & Schanker, LLC
1899 Wynkoop Street, Suite 700
Denver, CO 80202
Telephone: (303) 893-9800
FAX: (303) 893-9900
E-mail: dschanker@coloradolaw.net
E-mail: kyle.bachus@coloradolaw.net
Email: celliott@coloradolaw.net
Attorney for Plaintiff Evelyn Ludgood